**STATE of Minnesota, Appellant,**

v.

**William Leroy FIELDS, Respondent.**

**No. A04–2474.**

Supreme Court of Minnesota.

May 3, 2007.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, David J. Hauser, Otter Tail County Attorney, Fergus Falls, for appellant.

Marie L. Wolf, Assistant State Public Defender, Minneapolis, for respondent.

## OPINION

MEYER, Justice.

In 2004, a jury in Otter Tail County convicted respondent William Leroy Fields of criminal sexual conduct for raping K.W. in the summer of 1997. In an unpublished decision, a divided panel of the court of appeals held that the prosecutor's inquiry into a theft by Fields, an incident unrelated to the rape and not resulting in a conviction, constituted error because the prosecutor did not comply with the procedures for the use of *Spreigl* evidence. *State v. Fields,* No. A04–2474, 2006 WL 463524, at *4 (Minn.App. Feb.28, 2006). The court of appeals failed to consider whether the inquiry was admissible under Minn. R. Evid. 608(b). *Fields,* 2006 WL 463524, at *4. The court further held that a jury instruction regarding victim testimony corroboration was improper. *Id.* at *5. The court also indicated that parts of the prosecutor's closing argument were "arguably" improper. *Id.* at *7. The court of appeals reversed and remanded based on the cumulative prejudicial effect of the claimed errors. *Id.* at *7–8. We reverse the decision of the court of appeals.

In 1997, Fields and J.F., his wife, lived in a trailer home on a dairy farm in Otter Tail County with their two daughters. J.F. is the older sister of K.W. In March 1997, K.W., her mother, and a younger sister moved to Minnesota so K.W. could receive treatment for scoliosis from a hospital in Minneapolis. They initially resided with the Fields family. Fields was 25 years old, and K.W. was 11 years old.

K.W. testified that, about one month after she moved into the trailer home, Fields began making suggestive remarks to her and touching her in a sexual manner. She also stated that he engaged in "dirty talk," describing sexual things he wanted to do to her. K.W. testified that one day, most likely in spring 1997, Fields lured her into his bedroom, shut the door, and raped her. K.W. said that after the rape was completed, Fields threatened her, telling her to act like nothing had happened or her family would be thrown out of the trailer and "something else" would happen. She said she thereafter avoided being alone with Fields and that the inappropriate touching and comments came to an end.

K.W. had surgery on her back in August 1997. By the time K.W. left the hospital, her family was no longer living with the Fields family. Following the summer of

1997, K.W. developed a number of personal problems, including personality changes, acid reflux, weight gain, poor performance at school, and a fast heart rate that is treated with prescription medicine.

K.W. did not tell anyone about the rape or Fields' sexual advances for several years. She testified that she first mentioned Fields' sexual misconduct in 2001, when she told her aunt, T.W., that Fields had said inappropriate things. K.W. said she first mentioned the rape in September 2003 when she told her mother. While K.W. had remained silent in part so that she could continue to have a relationship with Fields' children, K.W.'s nieces, K.W. decided to come forward because she was concerned about the quiet and moody behavior of one of Fields' daughters. K.W. believed that the behavior of Fields' daughter mirrored her own behavior following the rape. K.W.'s mother called the police to report the crime.

A police detective interviewed K.W. on September 16, 2003. K.W. initially told the detective that Fields had touched her in a sexual manner and said inappropriate things, but did not reveal the rape. After discussing this interview with K.W.'s mother, the detective conducted a second interview, and K.W. revealed that Fields had raped her. The detective explained at trial that victims of sex crimes "don't necessarily want to disclose all the information, sometimes for years, sometimes not on the first interview."

T.W. confirmed that K.W. told her about the inappropriate touching and sexual comments in July or August of 2001. She also stated that K.W. had mentioned inappropriate comments by Fields before that time. She testified that K.W. was reluctant to talk about the issue because she was worried about her family being able to see her nieces, Fields' daughters. T.W. also indicated that Fields had in the past directed sexually suggestive remarks at her and at K.W.'s mother.

K.W.'s mother testified that in July 2001 she learned of K.W.'s revelations to T.W. and that K.W. denied them when questioned. K.W.'s mother also stated that K.W. later admitted that the revelations to T.W. in the summer of 2001 were true. K.W.'s mother confirmed that K.W. told her of the rape in September 2003.

Fields' wife, J.F., testified that in 1997 she did not have a driver's license and was nearly always in and around the trailer home, and that this made it very unlikely that the rape could have occurred as K.W. described it. She also described several instances when she believed that K.W. had lied. She admitted that Fields sometimes made sexual comments to T.W. and to K.W.'s mother.

Fields testified in his defense, denying the rape occurred. Fields stated that his work schedule and the presence of others living in the trailer would have made it very difficult for the incident to have happened as K.W. described. Fields said that K.W. did not appear uncomfortable in his presence and did not try to avoid him. He admitted that he had made sexual comments to T.W. and to K.W.'s mother.

During cross-examination of Fields, the prosecutor inquired about an incident when Fields was "in trouble basically for stealing from an employer." Fields admitted the theft and conceded that he "went to court for that." No objection was made to the state's questions. Shortly after this inquiry, the district court instructed the jury sua sponte:

> [T]he State has just introduced evidence of an occurrence at an earlier date * * *. This evidence was offered for the limited purpose of assisting you in determining whether the Defendant, Mr. Fields, committed those acts with which he is charged in the Complaint I have

read to you in this courtroom. Mr. Fields is not being tried for, and may not be convicted of, any offense other than * * * the offenses charged in the Complaint. You are instructed specifically that you are not to convict Mr. Fields on the basis of any occurrence on an earlier date * * *.

Later, when discussing jury instructions, Fields' counsel stated that the court

quite appropriately read the * * * limiting instruction when a prior criminal conviction is made reference to in the court, and I'd ask the Court to consider including that also now in the final jury instructions. I wasn't really anticipating that. I certainly understand that once my client took the stand, that was fair game; but now that it has become a part of the trial, I'd ask the Court to include the jury instruction that you read as a part of the written instructions that we're going to provide to the jury.

In response to a follow-up question from the court, the prosecutor stated: "I don't believe there was a true conviction. I believe he acknowledged that he had been in trouble with the law * * *." Fields' counsel then stated that "the tenor of the * * * comments went to the fact that he had acknowledged that he was convicted of the offense." The court ultimately instructed the jury to "be careful to consider any previous conviction only as it may affect the weight of [Fields'] testimony. You must not consider any previous conviction as evidence of guilt of the offense for which [Fields] is on trial here."

In addition, the prosecutor requested that the jury be instructed that K.W.'s testimony need not be corroborated. While Fields' counsel objected to the instruction as unnecessary and prejudicial, the court instructed the jury that "the testimony of a victim need not be corroborated." In rebuttal argument, the prosecutor reminded the jury of this instruction.

The jury convicted Fields of one count of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subds. 1(a), 2(a) (1996); one count of first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subds. 1(g), 2(a) (1996); one count of second-degree criminal sexual conduct in violation of Minn. Stat. § 609.343, subds. 1(a), 2(a) (1996); and one count of second-degree criminal sexual conduct in violation of Minn.Stat. § 609.343, subds. 1(g), 2(a) (1996). The court found the convictions arose from a single behavioral incident, vacated three of the four counts, and imposed a sentence of 86 months in prison for first-degree criminal sexual conduct.

On appeal to the court of appeals, Fields argued that the state's inquiry into the theft incident was improper, that it was error to instruct the jury that the victim's testimony need not be corroborated, and that the prosecutor committed misconduct by vouching for witnesses and misstating the burden of proof during closing argument. The court of appeals agreed and reversed because it deemed the combined effect of multiple errors to have been prejudicial. *Fields*, 2006 WL 463524, at *7–8. The state sought review by this court, asserting that the inquiry into the theft was permissible for impeachment purposes under Minn. R. Evid. 608(b), that the inclusion of the witness testimony corroboration instruction was harmless error, and that the prosecutor's closing argument was proper.

I.

The first question we address is whether the state committed prosecutorial misconduct by eliciting evidence of Fields' theft without having first satisfied substantive and procedural requirements for the admission of that evidence. Fields asserts that the state failed to meet these requirements, and that its failure amounted to

prosecutorial misconduct. The court of appeals concluded that the theft evidence was inadmissible as *Spreigl* evidence under Minn. R. Evid. 404(b) because the state did not comply with the notice requirements of *Spreigl*. *Fields*, 2006 WL 463524, at *4. The court of appeals failed to consider the state's alternative ground for admissibility under Rule 608(b).

■■■ We have recently considered the principles that guide our inquiry when a claim of prosecutorial misconduct is asserted. The prosecutor is an officer of the court charged with the affirmative obligation to achieve justice and fair adjudication, not merely convictions. *State v. Ramey*, 721 N.W.2d 294, 300 (Minn.2006). Generally, a prosecutor's acts may constitute misconduct if they have the effect of materially undermining the fairness of a trial. *Id.* Also, misconduct results from violations of clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law. *See id.* at 301 (stating "[w]e expect that prosecutors, as well as defense counsel, are aware of our case law proscribing particular conduct as well as the standards of conduct prescribed by the ABA" and stressing impropriety of engaging in "clearly proscribed conduct"). Further, we have held that attempting to elicit or actually eliciting clearly inadmissible evidence may constitute misconduct.[1] *See State v. Williams*, 525 N.W.2d 538, 544–45, 549 (Minn.1994).

■■■ Ordinarily, evidence of other crimes or prior bad acts of a defendant is not admissible to show behavior consistent with the character of that defendant. *State v. DeWald*, 464 N.W.2d 500, 502–03

(Minn.1991); *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Minn. R. Evid. 404(b). In addition, prior misconduct, other than conviction of a crime, may be admissible for the purpose of attacking the witness's credibility if the prior misconduct is probative of untruthfulness. Minn. R. Evid. 608(b).

Accordingly, if it is clear that evidence of Fields' theft was not probative of truthfulness or untruthfulness as required by Rule 608(b) and thus inadmissible, then seeking to introduce that evidence may constitute misconduct. Similarly, if it is sufficiently clear that Rule 608(b) evidence was inadmissible because certain procedural requirements were not met, then the prosecutor, by seeking to elicit such evidence, may be committing misconduct.

In this case, the state elicited the following testimony during cross-examination of Fields:

Q: All right. Now, I mean, in your past, Mr. Fields, there's been times that you haven't been necessarily honest. Would you say that?

A: To a certain extent.

Q: And specifically, I'm just talking about a time in the state of Georgia when, I believe, you were in trouble basically for stealing from an employer. Do you recall that?

A: Yeah. But I didn't lie about it.

Q: But you took from the employer.

A: Yeah.

Q: When was that exactly?

---

1. Frequently, cases on this topic indicate that it is misconduct to seek to introduce evidence that has previously been ruled inadmissible by the district court. *See, e.g., State v. Ray*, 659 N.W.2d 736, 744 (Minn.2003). However, there is case law indicating that attempts to elicit clearly inadmissible evidence, even if that evidence was not previously ruled inadmissible by the district court, may constitute misconduct. *See State v. Williams*, 525 N.W.2d 538, 544–45, 549 (Minn.1994).

A: Ninety-six I think it was maybe.

Q: And you went to court for that and that—at that time?

A: Uh-huh.

Fields did not object to this line of questioning, but on appeal asserts that the state committed prosecutorial misconduct by eliciting this evidence without giving notice of its intent to do so. The state counters that the prior theft was admissible as evidence of prior bad acts for impeachment purposes under Minn. R. Evid. 608(b) and that it substantially complied with the requirements for admission of Rule 608(b) evidence. The state argues that any noncompliance was not prejudicial and did not rise to the level of prosecutorial misconduct. The state further argues that even if this court were to conclude that prosecutorial misconduct occurred, because Fields did not object to the evidence during trial, this court should not review the claimed error because Fields cannot establish that the error was plain or that it affected his substantial rights.

 We first consider whether the defendant has demonstrated that the prosecutor erred by attempting to introduce evidence that was clearly inadmissible as substantive evidence. Because Fields did not object, we review the alleged misconduct under a plain error standard. *Ramey*, 721 N.W.2d at 302. At the time of Fields' trial, Minn. R. Evid. 608(b) stated in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness'[s] credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness'[s] character for truthfulness or untruthfulness * * *.

The rule requires that the conduct at issue be "probative of truthfulness or untruthfulness." We have held that evidence of commission of a theft, while not directly involving false statement or dishonesty, may be admitted in the discretion of the district court as evidence of truthfulness or untruthfulness. *See State v. Clark*, 296 N.W.2d 359, 367–68 (Minn.1980) (holding admission of evidence of auto theft not resulting in a conviction was proper under Rule 608(b) because "theft of the type described is sufficiently akin to crimes of dishonesty, such as forgery, bribery, fraud, and perjury, typically viewed as relevant to veracity"). Although Fields claimed he did not lie and few other details of the theft were elicited, other than that the theft did not result in a conviction, we conclude that it would have been within the district court's discretion to conclude that evidence of a theft by Fields from an employer was probative of truthfulness or untruthfulness and, therefore, the evidence was admissible. Accordingly, the prosecutor did not err by attempting to admit evidence that was clearly inadmissible under Rule 608(b).

 We next consider whether the prosecutor erred by attempting to circumvent clearly established procedural rules for the admission of Rule 608(b) evidence. We established the following procedural requirements for admission of Rule 608(b) evidence in *State v. Fallin:*

> [T]he prosecutor in a criminal case generally may not cross-examine a defendant or defense witness pursuant to Minn. R. Evid. 608(b) about prior misconduct unless (a) the prosecutor has given the defense notice of intent to cross-examine pursuant to the rule, (b) the prosecutor is able to provide the trial court with sufficient evidentiary support justifying the cross-examination, and (c) the prosecutor establishes that

the probative value of the cross-examination outweighs its potential for creating unfair prejudice to the defendant. 540 N.W.2d 518, 522 (Minn.1995). Fields asserts that our holding in *Fallin* requires the state to not only give notice of its intent to cross-examine a defendant under Rule 608(b), but also to request a pretrial hearing to obtain a ruling on the admissibility of the impeachment evidence. We do not read *Fallin* to establish such a clear command. Rather, *Fallin* suggested that the purpose of giving notice to the defense of the intended use of impeachment evidence is to "give[ ] the defendant an opportunity to request a hearing." *Id.*

While *Fallin* describes the "proper approach" for using Rule 608(b) evidence and states that a prosecutor "generally may not" elicit 608(b) evidence without meeting certain safeguards, we did not explicitly state that 608(b) evidence is inadmissible if the prosecutor fails to comply. *See Fallin*, 540 N.W.2d at 522. By comparison, in *Spreigl* we addressed the use of evidence under Minn. R. Evid. 404(b) and stated clearly that such evidence is not to be received unless certain safeguards are met.[2] Consequently, we conclude that *Fallin* did not clearly indicate that failure to satisfy its procedural requirements for admissibility of evidence under Rule 608(b) would result in the evidence being ruled inadmissible. Because *Fallin* did not create sufficiently clear requirements for admissibility of Rule 608(b) evidence and because the evidence of a prior theft was probative of Fields' untruthfulness and likely admissible, we conclude that the prosecutor did not commit misconduct with her limited inquiry into the theft. Because Fields has not met his burden of establishing prosecutive error, we need not address whether any error was plain or whether it affected Fields' substantial rights.

We caution prosecutors that we do not approve of either the prosecutor's actions in this case or failure to follow our recommendations more generally, even when such a failure falls short of misconduct. In addition, since Fields' trial, Minn. R. Evid 608 has been amended to explicitly incorporate the holding of *Fallin*,[3] so the safeguards described in *Fallin* are no longer merely the "proper approach" and are now prerequisites for admissibility of Rule 608(b) evidence. *See* Minn. R. Evid. 608(c). Hereafter, evidence offered under Minn. R. Evid. 608(b) shall not be received unless the notice required by amended Minn. R. Evid. 608(c) is memorialized in the record.[4]

2. Specifically, we stated:

[W]e now hold that in the trial of this and future criminal cases where the state seeks to prove that an accused has been guilty of additional crimes and misconduct on other occasions * * * it shall not hereafter be received unless within a reasonable time before trial the state furnishes defendant in writing a statement of the offenses it intends to show he has committed * * *.

*Spreigl*, 272 Minn. at 496–97, 139 N.W.2d at 173.

3. Effective September 1, 2006, the following language was added to Minn. R. Evid. 608:

The prosecutor in a criminal case may not cross-examine the accused or defense witness under subdivision (b) unless (1) the prosecutor has given the defense notice of intent to cross-examine pursuant to the rule; (2) the prosecutor is able to provide the trial court with sufficient evidentiary support justifying the cross-examination; and (3) the prosecutor establishes that the probative value of the cross-examination outweighs its potential for creating unfair prejudice to the accused.

4. We note that the procedural requirements for the admission of Rule 404(b) evidence are described in the rules of criminal procedure, Minn. R.Crim. P. 7.02, 11.04. Under these rules the prosecution is prohibited from introducing *Spreigl* evidence unless notice is given and the *Spreigl* evidentiary requirements are met. The rules also make a hearing on admissibility contingent on a defense motion.

## II.

Minnesota Statutes § 609.347, subd. 1 (2004), states "[i]n a prosecution under [Minn.Stat. §§] 609.109 or 609.342 to 609.3451, the testimony of a victim need not be corroborated." Therefore, the district court's instruction on victim testimony corroboration was an accurate statement of law. Nevertheless, the court of appeals has long held that it is error to instruct a jury that the testimony of a victim alone may support a conviction. *See, e.g., State v. Johnson*, 679 N.W.2d 378, 388 (Minn.App.2004), *rev. denied* (Minn. Aug. 17, 2004). In reliance on its prior decisions, the court of appeals held that the instruction in this case was erroneous because it might have caused the jury to give K.W.'s testimony undue weight. *Fields*, 2006 WL 463524, at *5. We are not asked to decide whether the instruction was erroneous because, for purposes of this appeal, the state concedes that it was error to give the instruction. The state's sole argument is that the error was harmless.

■■■■ "Erroneous jury instructions merit a new trial if it cannot be said beyond a reasonable doubt that the error had no significant impact on the verdict." *State v. Valtierra*, 718 N.W.2d 425, 433 (Minn.2006) (quotation omitted). Assuming, without deciding, that the district court erred in giving the instruction on victim testimony corroboration, it is clear that inclusion of the instruction was harmless beyond a reasonable doubt. We find it significant that the instruction was merely unnecessary rather than an inaccurate statement of law. *See State v. Green*, 719 N.W.2d 664, 672 (Minn.2006). The instruction did not under any circumstances mandate that the jury draw any particular inference, and the parties were free to argue for any conclusion they

pleased. Moreover, the instruction was not given undue emphasis, as the prosecutor mentioned the instruction a single time. *See State v. Olson*, 482 N.W.2d 212, 216 (Minn.1992) (indicating that the prosecutor's closing argument will be considered in determining the impact of an erroneous instruction on the verdict). Finally, the jury was instructed properly on burden of proof and presumption of innocence, and we generally assume that the jurors have followed the court's instructions. *See, e.g., State v. Steward*, 645 N.W.2d 115, 122 (Minn.2002). Therefore, we conclude that the instruction did not have any significant impact on the jury's verdict.

## III.

Fields argues that the prosecutor committed misconduct during closing argument by vouching for the credibility of witnesses and by misstating the burden of proof by suggesting that Fields could not explain why K.W. would lie about the rape. The court of appeals stated that "statements made by the prosecutor * * * arguably shifted the burden to appellant to prove that he was not guilty." *Fields*, 2006 WL 463524, at *7. However, the court did not explicitly conclude that the prosecutor's closing argument was improper, saying only that the argument "standing alone, would not warrant reversal." *Id.*

■■■■ "A prosecutor may not personally endorse the credibility of witnesses." *State v. Swanson*, 707 N.W.2d 645, 656 (Minn.2006) (citation omitted). However, the state is free to argue that particular witnesses were or were not credible. *State v. Lopez–Rios*, 669 N.W.2d 603, 614 (Minn.2003). When evaluating alleged vouching, "a court will look at the closing argument as a whole." *Swanson*, 707

Minn. R.Crim. P. 11.04. The development of procedural rules for the admission of 608(b) evidence is important and, therefore, we refer

to the criminal rules committee the task of studying and making recommendations to this court for changes to the rules.

N.W.2d at 656. Misstatements of the burden of proof also constitute prosecutorial misconduct. *State v. Hunt,* 615 N.W.2d 294, 302 (Minn.2000).

In this case, all of the allegedly objectionable statements discuss the credibility of witnesses in the context of the evidence before the court and the conclusions that can be drawn from that evidence. The prosecutor raised the issue of motive for K.W. to lie in the context of credibility, stating shortly thereafter that "the number-one factor is, when you accept that credibility of the witness, their interest or lack thereof in the outcome of the case." Fields fails to point to any explicit misstatement of the burden of proof. After reviewing the record, we conclude that the prosecutor's argument, though inartful, did not constitute misconduct and instead made permissible arguments about credibility and reasonable inferences based on the evidence.

In sum, for all of the foregoing reasons, we hold that the court of appeals erred when it held that numerous errors were committed and that the combined effect of these errors was prejudicial.

Reversed.

HANSON, Justice (concurring).

Although I concur with the outcome reached by the majority, I disagree with the analysis of the claim of prosecutorial misconduct that is based on the cross-examination of Fields about his prior theft from an employer. I conclude that the notice and pretrial hearing requirements set forth in *State v. Fallin* were intended to be prerequisites to the admissibility of evidence of other bad acts under Minn. R. Evid. 608(b). 540 N.W.2d 518, 522 (Minn. 1995).

In *Fallin,* we said that a prosecutor "generally may not cross-examine a defendant * * * about prior misconduct" unless the prosecutor has given notice, provided

evidentiary support, and established that the probative value outweighs the prejudicial effect. *Id.* We further held that the district court "erred in permitting this cross-examination" where these procedures had not been followed. *Id.* The words "may not cross-examine" and "the trial court erred in permitting this cross-examination" make it clear that the evidence is not admissible. And those words also lead me to conclude that a prosecutor who pursues cross-examination in violation of *Fallin* has committed misconduct.

But, in *Fallin* we also held that the district court's decision to permit the cross-examination was harmless error. *Id.* I would likewise hold that the brief cross-examination of Fields on the subject of his prior theft, in which he admitted to theft in general terms, was harmless error.

PAGE, Justice (dissenting).

I respectfully dissent. First, I disagree with the court's conclusion that the prosecutor's cross-examination of Fields about the theft from his employer was not plain error. Because Fields did not object to the questioning, we review the prosecutor's conduct under the plain error doctrine. *State v. Mayhorn,* 720 N.W.2d 776, 785 (Minn.2006). To determine whether the line of questioning was plain error, we look to the requirements of Minn. R. Evid. 608. As the court points out, at the time of Fields' trial, Rule 608(b) required the conduct to be probative of truthfulness or untruthfulness. But the rule's language demonstrates that the trial court was required to make the determination as to whether the conduct was probative of truthfulness or untruthfulness *before* the misconduct could be used for cross-examination:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other

than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, *in the discretion of the court, if probative of truthfulness or untruthfulness,* be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness * * *.

Rule 608(b) (emphasis added). The rule's language is clear that the conduct may be used only in the discretion of the trial court. It is the court's role to determine whether the conduct is probative of truthfulness or untruthfulness, which necessarily must be done *before* a party uses the misconduct on cross-examination. The rule does not contemplate the conduct being used at the prosecutor's whim.

In *Fallin,* we explained the requirements of Rule 608(b) in order to emphasize the rule's mandate. *See* 540 N.W.2d at 521–22. Our decision in *Fallin* addressed the same circumstance presented in this case: the prosecutor confronted the defendant on cross-examination about specific uncharged conduct for the purpose of impeaching his credibility. *Id.* at 519. We expressed our concern in *Fallin* that "the defense apparently had no notice that the prosecutor intended to cross-examine defendant on the subject in question," and the prosecutor's offer of proof constituted nothing more than the assertion that the misconduct occurred. *Id.* at 522. It was in that context that we held that "[t]he proper approach would have been for the prosecutor to give pretrial notice, which would have given the defendant an opportunity to request a hearing on the issue before making a decision as to whether or not to testify." *Id.* We then stated that the prosecutor generally may not cross-examine a defendant about other misconduct unless the prosecutor gives notice to the defense, is able to provide the trial court with sufficient evidentiary support justifying the cross-examination, and the

prosecutor establishes that the probative value of the cross-examination outweighs its potential for undue prejudice. *Id.* These requirements, as laid out in *Fallin,* bolster the rule's requirement that the trial court must make a determination *before* the cross-examination can begin.

In this case, the prosecutor did not follow the specific language of the rule as it was written at the time of trial, nor did she follow any of the procedures prescribed in *Fallin.* The record reflects that both the court and defense counsel expressed surprise over the prosecutor's cross-examination of Fields about the theft from his employer. The state argues that it did not have a chance to create a record of notice being given because the defendant did not object before the state could demonstrate the cross-examination's probative value. But both Rule 608(b) and *Fallin* place the burden on the state to give notice and thus to create the record. The state did not demonstrate to the trial court, and the court did not determine, whether the probative value of the prior misconduct outweighed its prejudicial effect. The record is devoid of any information about the circumstances regarding the alleged theft or how much, if at all, it related to truthfulness or untruthfulness. The court explains that whether to allow the questioning about the prior alleged theft was up to the discretion of the trial court and, therefore, the line of questioning was not clearly inadmissible. What the court fails to acknowledge is that, before the trial court could exercise discretion about whether to allow the questioning, the state had to follow Rule 608's explicit language and satisfy the procedural requirements outlined in *Fallin.* Neither of those things happened here. Nor did the trial court have the opportunity to exercise its discretion. In giving the cautionary instruction, the trial court merely made an effort to clean

up the problem created by the prosecutor after the cat was already out of the bag.

Additionally, the record contains no evidence to support the use of the theft from Fields' employer in the prosecutor's cross-examination, except the defendant's affirmative response to the prosecutor's question, "And specifically, I'm just talking about a time in the state of Georgia when, I believe, you were in trouble basically for stealing from an employer. Do you recall that?" The state cannot depend on the defendant's answer and instead must have independent evidence of the misconduct. *Fallin*, 540 N.W.2d at 522 n. 5 ("[R]egardless of whether or not the state is allowed to prove the prior conduct by presenting extrinsic evidence to the jury, the state must *be able* to satisfy the trial court that there is a valid basis for the insinuation on cross-examination."). Because the state did not follow the requisite procedures, the prosecutor's questioning was clearly impermissible and constituted plain error. Therefore, the prosecutor's cross-examination constituted misconduct.

I also disagree with the court's conclusion that the prosecutor did not commit misconduct in her closing argument to the jury. Again, we use the plain error analysis because Fields did not object during the closing argument. *Mayhorn*, 720 N.W.2d at 785. Our case law is clear that misstating the burden of proof constitutes prosecutorial misconduct. *State v. Hunt*, 615 N.W.2d 294, 302 (Minn.2000). The court contends that Fields failed to point to any explicit misstatement of the burden of proof, but the prosecutor's statement about Fields' inability to explain K.W.'s motive for claiming that he sexually assaulted her erroneously suggested that Fields had the burden to explain why K.W. would lie.

Fields had no burden to explain K.W.'s motives for claiming that he sexually assaulted her because he had no burden to present any evidence whatsoever. *See In re Winship*, 397 U.S. 358, 361–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). But the prosecutor implied in her closing argument that Fields had to explain why K.W. would claim he sexually assaulted her when she pointed out that, although Fields denied assaulting the victim, "[he] couldn't come up with why [he] thought [K.W.] would do this." The prosecutor then immediately told the jury to think about the fact that Fields gave no explanation for K.W.'s motives, stating, "You think about that when you go back in the room." The prosecutor thus left the jury with a false impression of the state's burden of proof, implying that the defendant had the burden to explain K.W.'s motives.

The prosecutor's argument also left the jury with the impression that it had to conclude that K.W. was lying in order to acquit Fields. We have held that it is plain error for a prosecutor to ask "were they lying" questions when the questions "shifted the jury's focus by creating the impression that the jury must conclude that * * * witnesses were lying in order to acquit [the defendant]." *State v. Morton*, 701 N.W.2d 225, 235 (Minn.2005).

The fact that the prosecutor emphasized the importance of Fields' testimony in the context of a misleading statement of the burden of proof only emphasizes that statement's problematic nature. The prosecutor began her closing by explaining that K.W. had been violated and then said that the true issue in the case was witness credibility and whether the defendant had sexually assaulted K.W. She said, "We'll talk about those things as credibility and why in the world would [K.W.] say such a thing if it weren't true." She then discussed the elements of the case, concluded that most elements were not disputed, and explained that the disputed issue in the case was "whether or not the Defendant

intentionally penetrated [K.W.] in this case." Directly following that statement the prosecutor discussed Fields' testimony and the fact that Fields could not explain K.W.'s motives. The prosecutor's emphasis on Fields' testimony, and the statement itself, likely presented a source of confusion for the jury about the burden of proof and whether the defendant was required to explain K.W.'s motives. *See State v. Strommen*, 648 N.W.2d 681, 690 (Minn. 2002) (noting that, even though the court correctly instructed the jury on the burden of proof, the prosecutor's misstatement of the burden of proof "presented a source of confusion for the jury and may have played a role in the decision to convict"). Even though a prosecutor is permitted to discuss witness credibility, a prosecutor is not permitted to insinuate that a defendant has the burden of explaining the motives of another witness. Much like the "were they lying" questions in *Morton*, the prosecutor's comment constituted plain error and thus prosecutorial misconduct.

Because the prosecutor's misconduct constituted plain error, the burden shifts to the state to demonstrate that the misconduct did not affect substantial rights. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn.2006). Error affects substantial rights if there is a reasonable likelihood that the absence of misconduct would have had a significant effect on the jury's verdict. *Id.* When determining whether a prosecutor's misconduct affected substantial rights, we examine the strength of the total evidence against the defendant. *See State v. Washington*, 521 N.W.2d 35, 40 (Minn.1994). The evidence in this case came down to Fields' word against K.W.'s. The prosecutor's cross-examination about Fields' theft from his employer was intended to and certainly could have affected the jury's perception of his credibility, especially in light of the fact that the court instructed the jury as if the misconduct were a previous conviction. In addition,

the prosecutor's misstatement of the burden of proof in the closing argument presented yet another barrier for Fields. Given the record presented and misconduct involved, I conclude that the state did not meet its burden of proving that Fields' substantial rights were not affected. *See Ramey*, 721 N.W.2d at 302. Rather, the totality of the evidence indicates that Fields' substantial rights were affected and that the prosecutor's misconduct affected the outcome of the trial. Each instance of misconduct individually justifies reversal and a new trial; cumulatively, they demand it.

I respectfully dissent.