*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0067**

State of Minnesota,
Respondent,

vs.

Jeremy Bruce Cournoyer,
Appellant.

**Filed January 11, 2016
Affirmed
Reyes, Judge**

Beltrami County District Court
File No. 04CR131377

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Annie P. Claesson-Huseby, Beltrami County Attorney, Bemidji, Minnesota (for
respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Reyes, Judge; and

Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**REYES**, Judge

On appeal from his conviction of first-degree criminal sexual conduct, appellant argues that the district court committed reversible error by playing the complainant's video-recorded statement to a forensic interviewer at trial because the statement was inadmissible hearsay. He also raises several arguments in his pro se supplemental brief. We affirm.

## FACTS

In 2005, appellant Jeremy Bruce Cournoyer was convicted of attempted second-degree sexual assault of an 11-year-old girl. In 2013, appellant was convicted of failure to register his new address as a predatory offender. On April 18, 2013, appellant posted bail and returned to his mother's home where the complainant A.D. was currently living. A.D. was 11 years old at that time.

On April 30, 2013, A.D.'s aunt, C.D., took A.D. to the emergency room because she complained of pain in her rectal area due to an alleged sexual assault by appellant. At the emergency room, Dr. William Shuler completed a cursory examination but did not complete a sexual-assault examination. He referred A.D. to the Family Advocacy Center, where she recounted what occurred and provided a video-recorded statement. Appellant was subsequently charged with first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342, subd. 1(a) (2012). Appellant waived his right to a jury trial, and the *Blakely* notice regarding the aggravating factors and a court trial followed.

A.D. alleged the following in both her live trial testimony and in her video-recorded testimony. She stated that, on April 19, 2013, everyone left the house, and she was left home alone with appellant. Appellant slammed her finger in the door. Appellant then grabbed her arm and pulled her into the bathroom. A.D.'s statements after this point diverge in her live and video-recorded testimony.

During trial, A.D. consistently testified that appellant touched her vagina with his hand. She also stated that he licked her vagina and "butt." She stated she did not tell anyone that appellant raped her because he threatened to rape her again and kill her if she told anyone. A.D. responded in the affirmative to questions regarding statements she previously made in her video-recorded statement that her "butt" hurt afterwards, and it was gross.

In her video-recorded statement, A.D. stated that appellant touched her vagina with his hands.[1] She also said that appellant raped her vaginally and anally. She complained of pain in her "butt." A.D. also alleged that appellant stopped raping her when he heard a car pull up to the house. However, inconsistent with her video-recorded statement, at trial, A.D. did not state that appellant vaginally or anally raped her, only that appellant's "privacy" (penis) "just touched the outside" of her "butt."

In addition to A.D.'s trial testimony, the state relied on the testimony of Dr. Shuler as well as Aria Trudeau and Jennifer Fraik from the Family Advocacy Center. Dr. Shuler testified that A.D. came to the emergency room because of an alleged sexual assault and,

---

[1] A.D. initially told a teacher at school that her mother was abusive and that appellant "touched her."

3

more specifically, complained of pain in her anal region. He stated that A.D. reported that appellant took her into the bathroom, penetrated her vaginally and rectally, put his finger and penis inside her, and threatened to rape her again and kill her if she told anyone about the assault. Trudeau conducted A.D.'s forensic interview and testified regarding the forensic interview process. Trudeau also testified that A.D. described to her how appellant injured her finger in the metal part of the door and touched and rubbed her breast. A.D. told Trudeau that her "buttocks" hurt during the assault and still hurt. After A.D. provided a video-recorded statement, Fraik testified that she conducted a complete physical examination of A.D., during which A.D. complained of pain in her anal area. Fraik stated that A.D.'s injuries could be caused by penetrating trauma, blunt trauma or contusions, or some congenital birth defects. She also noted the absence of injuries to the perianal area or the perineum, an area where injuries are often seen after anal penetration.

Conversely, appellant testified that, on April 19, 2013, he was busy running errands all day while the children were at school. He then took A.D.'s mother, S.D., to Wal-Mart, attempted to pick up his brother at school, and then ran more errands with S.D. When appellant and S.D. arrived at home around 4:20 or 4:30 p.m., 13 of the 15 people who occupy the home were there, including A.D. Later, he picked up his mom from work around 5:00 p.m., picked up his brother's friend, and returned to the house around 6:30 or 7:00 p.m. Appellant denied that he sexually assaulted A.D. and maintains that at no point in the day was he alone with her.

4

After hearing live testimony and reviewing the parties' memoranda of law regarding the admissibility of the video-recorded statement, the district court admitted A.D.'s video-recorded testimony over appellant's objection under the hearsay residual exception. The district court found appellant guilty of first-degree criminal sexual conduct. This appeal follows.

**D E C I S I O N**

**I.     Admission of statements made during A.D.'s video-recorded statement**

Appellant argues that the district court erred by allowing the admission of A.D.'s video-recorded statement under both Minn. R. Evid. 801(d)(1)(B) and the hearsay residual exception, Minn. R. Evid. 807. We address each issue in turn.

**A.     The district court erred by admitting inconsistent statements made during A.D.'s video-recorded statement under Minn. R. 801(d)(1)(B), but appellant is unable to establish prejudice.**

Respondent argues in the alternative that the statement is admissible under rule 801(d)(1)(B). A prior statement made by a witness is not hearsay when, "the declarant testifies at the trial . . . and the statement is. . . consistent with the declarant's testimony." Minn. R. Evid. 801(d)(1)(B). While the district court did not explicitly reference this rule, it stated that "if there are inconsistencies [between the video-recorded statement and the live testimony] the [c]ourt will disregard those."

Inconsistent with her video-recorded statement, A.D. testified at trial that appellant's "privacy area" and hands "touched her butt." Despite attempts to rehabilitate A.D. and refresh A.D.'s memory, at no point did she state that appellant penetrated her butt or anal area. Instead, A.D. testified that his "privacy" (penis) "just touched the

5

outside." The prosecutor then asked A.D. "do you remember saying at the Family Advocacy Center that he put his privacy in your butt?" A.D. answered, "I think so." She also responded in the affirmative when the prosecuting attorney reminded her that she said it was gross and that it hurt afterwards. Because these statements were inconsistent with her video-recorded statement, the statements constitute hearsay.

But even if the district erred by admitting the videotape as substantive evidence, we must consider whether the admission prejudiced appellant. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). In order to convict appellant of first-degree criminal sexual conduct under Minn. Stat. § 609.341.12 (2012), the state must prove sexual penetration "committed without the complainant's consent" involving "(1) sexual intercourse, cunnilingus, fellatio, or anal intercourse; or (2) any intrusion however slight into the genital or anal openings: (i) of the complainant's body by any part of the actor's body or . . . by inducement if the child is under 13 years of age."

At trial, A.D. responded "uh-huh" and "yes" when asked whether appellant licked her vagina and "butt." Moreover, Dr. Shuler testified that A.D. had been penetrated vaginally and anally with both appellant's finger and penis and that A.D. complained of pain in her anal region. C.D. also testified that A.D. was penetrated both vaginally and anally and that A.D. complained about pain in her "butt." Fraik testified that A.D.'s physical examination was consistent with the report A.D. made. While there were no injuries to the perianal area or the perineum, which are both common areas to see injuries from anal penetration, Fraik noted that the body is naturally able to stretch and

6

accommodate, so injuries oftentimes do not occur. Fraik further testified that, given the amount of time since the event, if there were injuries they could have healed already.

Based on A.D.'s in-court testimony alone, the district court could conclude beyond a reasonable doubt that appellant committed criminal sexual conduct in the first degree by performing cunnilingus on A.D. without her consent. And the testimony of other witnesses supports the conclusion that appellant engaged in several types of penetration with A.D. The district court stated that it determined appellant's guilt without considering the videotaped statements. Thus, even if the district court erred by admitting inconsistent statements in A.D.'s video-recorded statement, it was harmless as appellant cannot demonstrate prejudice because evidence independent of the video-recorded statement supports the guilty verdict.

**B.  The district court did not err by admitting statements made during A.D.'s video-recorded statement under the residual exception.**

The residual exception allows admission of statements not falling under one of the accepted hearsay exceptions that (1) have "equivalent circumstantial guarantees of trustworthiness;" (2) are evidence of a material fact, (3) are more probative on that point than any other evidence that is attainable by reasonable methods, and (4) serve the interests of justice and the general purpose of the rules of evidence. Minn. R. Evid. 807. However, "[t]he court should make findings explicitly on the record unless there is a waiver, . . . or the basis of the ruling is obvious." *State v. DeRosier*, 695 N.W.2d 97, 105 (Minn. 2005) (quotation omitted). "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On

7

appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *Amos*, 658 N.W.2d at 203.

For the residual exception, we follow the totality of the circumstances approach to determine whether the out-of-court statement has circumstantial guarantees of trustworthiness equivalent to other hearsay exceptions. *State v. Robinson*, 718 N.W.2d 400, 408 (Minn. 2006). In child-abuse cases, the circumstances include whether the statement was spontaneous, whether the questioner had a preconceived idea of what the child should say, whether the statement was in response to leading questions, whether the child had a motive to fabricate, whether the statement remained consistent over time, and the mental state of the child at the time of the statement. *Id*. at 410. "The focus of rule 807 is the statement, not the testifying witness who heard the statement." *State v. Ahmed*, 782 N.W.2d 253, 261 (Minn. App. 2010).

Here, the district court analyzed and admitted the video-recorded statement under rule 803(24) as interpreted by the *Ortlepp* test. *State v. Ortlepp*, 363 N.W. 2d 39 (Minn. 1985). However, rule 803(24) has been updated, to rule 807. And the *Ortlepp* test is inapposite. In *Ortlepp*, the prosecution's witness recanted his prior statement at trial that incriminated both himself and the defendant. 363 N.W. 2d at 44. But here, the victim did not recant her earlier video-recorded statement.

In a rule 807 analysis, the district court must make findings on the four factors previously referenced. Similar to the findings made in *DeRosier*, "the [district] court made no specific findings regarding the requisite elements of the rule," other than the specific findings on the circumstantial guarantees of trustworthiness. *DeRosier*, 695

8

N.W.2d at 106. The district court found A.D.'s testimony to be credible. Although A.D.'s testimony was given 11 days after the alleged abuse occurred, the district court found that her testimony remained consistent with that of Dr. Shuler, Trudeau, and Fraik on what A.D. told them about the abuse. And her testimony was consistent with both the injury and examination. The district court also found that A.D.'s statement was made against her own interest because she stated that appellant would "kill her and rape her again" if she told anyone about the abuse. Such statements have a high degree of reliability. *See Oliver v. State*, 502 N.W.2d 775, 778 (Minn. 1993). Based on the totality of the circumstances, the district court did not err by admitting consistent statements made during A.D.'s video-recorded statement.

## II.  Appellant's pro se supplemental brief arguments

### A.  Claim of violation of rights under the Confrontation Clause

Appellant first argues that the district court erred by allowing the admission of A.D.'s video-recorded statement because the statement was inadmissible hearsay and violated his rights under the Confrontation Clause.

At trial, appellant objected to the admission of A.D.'s video-recorded statement on hearsay grounds, but did not object based on the Confrontation Clause. An error raised initially on appeal is reviewed under a plain-error analysis "and warrants reversal if: (1) an error occurred in the district court, (2) the error was plain, and (3) the error affects the defendant's substantial rights." *State v. Hull*, 788 N.W.2d 91, 100 (Minn. 2010). If appellant meets his burden on all three prongs, we then determine "whether the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding

9

before granting relief." *Id.* (quotation omitted). "[W]hether the admission of evidence violates a defendant's rights under the Confrontation Clause is a question of law that we review de novo." *State v. Warsame*, 735 N.W.2d 684, 689 (Minn. 2007).

In analyzing appellant's state and federal protections under the Confrontation Clauses, we use the same analysis. *State v. Holliday*, 745 N.W.2d 556, 564 (Minn. 2008). The Confrontation Clause of the United States constitution states that, "[i]n all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause excludes testimonial statements neither made by a witness not subject to cross-examination nor available to testify at trial. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004). However, statements are admissible where a witness is available to testify at trial and is cross-examined regarding prior statements, even when "the reliability of some out-of-court statements cannot be replicated." *Id.* at 59 n.9, 124 S. Ct. at 1369 n.9 (quotation and citation omitted).

Appellant argues that his rights under the Confrontation Clause were violated because A.D.'s non-testimonial statement must be admitted under a hearsay exception to avoid violating the Confrontation Clause. We disagree. A.D. testified in court and was cross-examined by appellant's counsel. Appellant was not denied his constitutional right of confrontation.

Appellant raises several additional arguments in his supplemental brief without argument or legal authority. In general, a claim will be considered unless it is waived for lack of briefing. *State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002) (deeming

arguments set out in pro se supplemental brief waived because the "brief contain[ed] no argument or citation to legal authority in support of the allegations"). Additionally, this court generally cannot consider issues not raised to the court below. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Nevertheless, these claims are without merit.

**B.      Claim of violation of due process from court trial**

Appellant generally cites to various cases, the Minnesota Rules of Criminal Procedure, and the Minnesota Statutes to argue that his due-process rights were violated by the court trial, without any analysis or arguments, thus waiving these arguments. *See Krosch*, 642 N.W.2d at 719. But even if we consider this argument, it is without merit. Against the advice of both of his attorneys, appellant knowingly waived his right to a jury trial. Appellant understood that he was waiving the right to have a jury decide the issue of the aggravating factors as well. Appellant's court trial was not a violation of his due-process rights.

**C.      Admissibility of Spreigl evidence**

Under Minn. R. Evid. 404(b), "[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." However, this evidence may be admitted to show motive, intent, knowledge, identity, absence of mistake or accident, or a common scheme or plan. *Id.* (quotations omitted). The district court's decision to admit this evidence, often referred to as *Spreigl* evidence, is reviewed for an abuse of discretion. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006).

Here, appellant argues that the prior conviction of second-degree criminal sexual conduct occurred nine years ago, was too remote in time, and overly prejudicial. Conversely, the state argues that all five *Spreigl* factors[2] were met to create a link between the bad act and the charged offense, including the fact that both victims were 11-year-old girls and, therefore, the use of the prior act was more probative rather than prejudicial. After carefully evaluating its probative value against its prejudice, the district court allowed in the prior *Spreigl* evidence. The district court did not err by admitting the *Spreigl* evidence.

### D. Constitutionality of Minn. Stat. § 609.347 (2012)

Appellant argues that Minn. Stat. § 609.347 is facially unconstitutionally vague because it applies no guidelines for "victim" testimony under the rules of evidence and authorizes arbitrary and discriminatory enforcement. This issue is waived as it was not raised in the district court. *Thiele*, 425 N.W.2d at 582. Moreover, appellant's claim is misguided.

Minn. Stat. § 609.347, subd. 1, states that the testimony of a victim need not be corroborated. And the supreme court has stated that "a conviction can rest on the uncorroborated testimony of a single credible witness." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004) (quotation omitted). Appellant argues that the "'victims'

---

[2] The five factors are: (1) The state must give notice; (2) clearly indicate what the evidence is being offered to prove; (3) that there is clear and convincing evidence that the defendant participated in a prior act; (4) the evidence is relevant and material to the state's case; and (5) the probative value outweighs the potential prejudice. *Angus v. State*, 695 N.W.2d 109, 119 (Minn. 2005).

testimony by relinquishing the need or requirement for corroboration of said testimony under the rules of evidence. . . creates vagueness grounds." This argument is inapplicable here. The testimony of the additional witnesses corroborated A.D.'s testimony that appellant engaged in multiple forms of penetration with A.D. Appellant's claim that Minn. Stat. § 609.347 is unconstitutional fails.

### E.  Dilution of the reasonable-doubt standard

Appellant argues that the use of "Minn. Stat. § 609.347 in the [district] court's jury instructions impermissibly diluted the reasonable doubt standard and rendered the entire requirement to satisfy reasonable doubt erroneous." But this statute does not apply here as no jury instructions were read because appellant had a court trial. We therefore need not consider this issue on appeal. *See Koudsi v. Hennepin Cnty. Med. Ctr.*, 317 N.W.2d 705, 708 n.3 (Minn. 1982) (holding that where a statute is inapplicable, no further discussion is necessary).

### F.  The district court's adoption of the state's proposed findings

A district "court's verbatim adoption of the state's proposed findings, standing alone, does not constitute grounds for reversal." *Dukes v. State*, 621 N.W.2d 246, 259 (Minn. 2001). But the practice of the verbatim adoption of a party's proposed findings and conclusions is hardly commendable. Our preference is "for a court to independently develop its own findings." *Id.* at 258.

Here, the district court adopted 86 of the state's 94 proposed findings. The court also adopted the state's language that the prongs of the *Ortlepp* test had been met in its conclusions-of-law section. While the preference is for a court to independently develop

13

its own findings, this does not constitute grounds for reversal. *Id*. at 259. Therefore, the district court did not err in adopting the state's proposed findings.

### G. Prosecutorial misconduct

Appellant argues that the prosecutor (1) improperly participated in a case involving a friend; (2) improperly used evidence by admitting inadmissible and irrelevant evidence, overlooked evidence, withheld evidence, and violated Minn. R. Evid. 609 procedures; and (3) injected personal opinion into the closing argument. Appellant acknowledges that he did not object to the alleged prosecutorial misconduct at trial. Unobjected-to prosecutorial misconduct is reviewed using a modified plain-error test. *State v. Carradine*, 812 N.W.2d 130, 146 (Minn. 2012).

Under the modified plain-error test there must be "(1) [an] error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Ramey*, 721 N.W.2d 294, 298 (Minn. 2006) (quotation omitted). An error is plain if it "contravenes case law, a rule, or a standard of conduct." *Id.* at 302. In cases of prosecutorial misconduct, appellant has the burden of proving the error and that it was plain. *Id.* If appellant meets his burden, it shifts to the state to show that the error does not affect appellant's substantial rights such that "there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotations omitted). If the first three prongs are met, we may correct the error if necessary to "ensure fairness and the integrity of the judicial proceedings." *Id* at 298 (quotation omitted).

We first examine each claim individually to determine whether it constitutes misconduct. *State v. Dobbins*, 725 N.W.2d 492, 506 (Minn. 2006). If we determine

there was prosecutorial misconduct, we must examine the misconduct individually and cumulatively to determine whether the misconduct denied appellant a fair trial. *Id.*

### 1.    Improper participation in a case involving a friend

Appellant alleges that it was improper for the prosecutor to involve herself in a case involving a friend because she did not recuse herself, and cites to Minn. R. Prof. [Conduct] 5(a) to support his claim. As an initial matter, there is no Minn. R. Prof. Conduct 5(a). And to the extent appellant is referring to Minn. R. Prof. Conduct 5.1 (a), that rule is inapplicable here because it relates to the responsibilities of managing partners to ensure that "all lawyers in the firm confirm to the Rules of Professional Conduct."

Appellant contends that a Pioneer Press article contains evidence showing that the prosecutor was S.D.'s personal friend. However, the newspaper article was not a part of the record at the district court. The record on appeal consists of "[t]he documents filed in the [district] court, the exhibits, and the transcript of the proceedings, if any." Minn. R. Civ. App. P. 110.01. Appellant bears the burden of providing an adequate record. *Mesenbourg v. Mesenbourg*, 538 N.W.2d 489, 494 (Minn. App. 1995). "It is well settled that an appellate court may not base its decision on matters outside the record on appeal, and that matters not produced and received in evidence below may not be considered." *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn. 1977). Therefore, the newspaper article cannot be considered on appeal.

15

## 2.    Improper use of evidence

Appellant alleges that the prosecutor violated rule 609 by not requesting a hearing outside the jury's presence.[3]  But appellant had a court trial, not a trial before a jury.

Appellant also alleges that the prosecutor failed to disclose the picture of A.D.'s finger in violation of Minn. R. Civ. P. 9, thus prejudicing him.  This argument is misguided.  Minn. R. Civ. P. 9.1 discusses the capacity to plead special matters.  Here, pictures of A.D.'s injured finger, exhibits four and five, were admitted into evidence without objection.  These exhibits were disclosed, offered, and properly received at trial.

Appellant further alleges that the prosecutor admitted irrelevant, false, and inadmissible evidence from A.D.'s physical exam, citing to *State v. Fields*, 730 N.W.2d 777 (Minn. 2007).  But, that case is inapposite as it involved admitting evidence of prior bad acts and whether the prosecutor's line of questioning constituted prosecutorial misconduct.  *See* Id. at 781-86.  The district court did not err in determining this evidence was admissible.

## 3.    Improper use of personal opinion in the closing argument

Appellant argues that the prosecutor "endors[ed] the credibility of the [s]tate's witnesses and inject[ed] personal opinion as to defense witnesses and defendant's credibility."  "A prosecutor commits misconduct by intentionally misstating evidence,"

---

[3] We note that, while appellant argues that the prosecutor admitted the evidence, it is the district court that decides whether or not to admit evidence.  We therefore construe appellant's argument as a challenge to the district court's decision to admit this evidence.

*State v. Mayhorn*, 720 N.W.2d 776, 788 (Minn. 2006), and by basing a closing argument on facts not in evidence. *State v. Stofflet*, 281 N.W.2d 494, 497 (Minn. 1979).

After a careful review of the record, we find nothing to indicate that the prosecutor misstated evidence or based the written closing argument on facts not in evidence. We are not persuaded that the prosecutor committed misconduct.

**H.     Sentencing errors**

Appellant argues that Minnesota Sentencing Guidelines violate his Sixth-Amendment right to trial by a jury because he was denied his right to have the jury prove beyond a reasonable doubt that his sentence should be enhanced and relies on *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004) to support his claim. He also argues that the admission of A.D.'s prior inconsistent statement was used to determine his enhanced sentence. Appellant did not raise these issues with the district court and waives them on appeal. *Thiele*, 425 N.W.2d at 582. Even if we were to consider them, they are without merit. Again, appellant waived his right to a jury trial, including the right to have a jury decide the issue of the aggravating factors. As discussed above, admitting A.D.'s video-recorded statement was not plain error, and there was sufficient evidence to prove multiple forms of penetration without the video evidence.

**I.     Ineffective-assistance-of-counsel claim**

Appellant argues he was deprived of a fair trial due to ineffective counsel. "The defendant must affirmatively prove that his counsel's representation 'fell below an objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). "We will generally not review an ineffective-assistance-of-counsel claim that is based on trial strategy." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). Because a claim of ineffective assistance of counsel involves a mixed question of law and fact, review is de novo. *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013).

Appellant argues that he was forced to waive his omnibus hearing, but the record does not reflect that the hearing was waived. He also argues that his attorneys did not present his alibi defense or have proper communication with him. But the record reflects that appellant's counsel presented an alibi defense on October 25, 2013. His counsel also requested a continuance due to lack of communication on December 10, 2013. Moreover, appellant stated on the record that he felt he had adequate time to speak with his attorneys. Finally, appellant makes various trial strategy arguments that are generally not reviewable. The record does not reflect that, but for counsel's errors, the results of the proceedings would have been different. Therefore, appellant was not deprived of a fair trial due to ineffective assistance of counsel.

**Affirmed.**