STATE of Minnesota, Appellant,

v.

Kasey Vo CAO, Respondent.

No. A08–1932.

Supreme Court of Minnesota.

Sept. 16, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Robert M.A. Johnson, Anoka County Attorney, Kathryn M. Timm, Assistant County Attorney, Anoka, MN, for appellant.

Charles F. Clippert, Caplan Law Firm, P.A., Minneapolis, MN, for respondent.

## OPINION

MEYER, Justice.

Respondent Kasey Vo Cao was found guilty of third-and fourth-degree criminal sexual conduct, in violation of Minn.Stat. §§ 609.344, subd. 1(d), and 609.345, subd. 1(d) (2008). During the State's closing argument, the prosecutor stated that Minnesota law did not require corroboration of the complainant's testimony for the jury to find Cao guilty of criminal sexual conduct. The court of appeals held that this statement was prosecutorial misconduct in the form of plain error. We hold that the prosecutor did not commit plain error because the prosecutor's statement did not contravene case law, a rule, or a standard of conduct. Moreover, we conclude that even if we assume the statement was plain error, Cao is not entitled to relief because the statement did not affect Cao's substantial rights. Therefore, we reverse and remand to the court of appeals for consideration of the remaining issues.

Cao was charged with one count each of third- and fourth-degree criminal sexual

conduct. *See* Minn.Stat. §§ 609.344, subd. 1(d), and 609.345, subd. 1(d). Under both counts, the State must prove that Cao knew the complainant was "physically helpless." Minn.Stat. §§ 609.344, subd. 1(d), and 609.345, subd. 1(d). A person is "physically helpless" if she is (a) asleep or not conscious; (b) unable to withhold consent or to withdraw consent because of a physical condition; or (c) unable to communicate nonconsent and the condition is known or reasonably should have been known to the actor. Minn.Stat. § 609.341, subd. 9 (2008). Cao conceded that he had sexual intercourse with the complainant, but asserted that she consented to having sex with him and was not "physically helpless."

The evidence at trial showed that on July 1, 2006, Krystle Tuma held a party at her home in Coon Rapids. M.G., Tuma's high school friend, attended. M.G. drank "one or two" beers before arriving at the party and then drank at least three more beers and four or five shots of hard liquor. Late that night, M.G. had a shot of alcohol that caused her to become ill. Tuma helped M.G. upstairs, where M.G. vomited. Tuma helped M.G. into bed in Tuma's bedroom and closed the door but did not lock or secure the door in any way.

Cao, Tuma's coworker, arrived at the party an hour and a half later. After some time passed, Tuma, Timothy Saunders, Melvin Freeman, and Derrick Thompson went looking for Cao. They went upstairs and tried to open the door to Tuma's bedroom where she had left M.G., but "it felt like there was something pushed up against [the door]." Tuma forced the door open and saw Cao lying in bed under the covers with M.G. Cao was not wearing clothes and tried to "cover himself up." M.G. appeared to be sleeping. Tuma yelled at Cao and Cao responded that he and M.G. were "just talking." Cao then left the bedroom. Tuma sat next to M.G. and asked her questions, but received only one-word answers. M.G. looked like she was "still sleeping" and lying in the same position in which Tuma had put her to bed. Tuma then went downstairs where she again heard Cao claim that he and M.G. were just talking. The two argued, and Cao left the house.

Saunders testified that he went upstairs with Tuma, Freeman, and Thompson to find Cao. Saunders saw Tuma try to open the bedroom door, found it blocked, and pushed harder to open it. A vacuum in the room looked like it had been blocking the door. The bed looked "disheveled," and Cao threw on his shirt "real quick." Tuma and Cao argued, and Cao said he "only wanted to talk to [M.G.]." Saunders saw a woman lying in bed, making no sound or movement. Tuma and Cao went downstairs and continued fighting. Saunders escorted Cao outside, and Cao left.

Freeman testified that he followed Tuma upstairs, along with Saunders and Thompson. He saw Tuma try to open the bedroom door, "pause[ ] for a second like something was restricting [the door]," and open the door by pushing harder. Cao, shirtless, sat up in bed, and M.G. remained in bed "like she was asleep." Tuma tried to wake M.G. by calling her name and shaking her. M.G. was "sort of unresponsive at first" but then awoke "sort of groggy." M.G. acted "like she was waking up." Cao and Tuma both eventually went downstairs, where Cao said that he "just wanted to talk to [M.G.]" and that "nothing happened." The two argued, Saunders separated them, and Cao left.

Thompson testified that he followed Tuma, Saunders, and Freeman upstairs. When he got upstairs, Thompson saw the bedroom door slightly open. Cao got up and started putting on clothing. Thompson also saw a woman lying in bed. She

was not moving or making any sound. While Tuma and Cao were arguing, Thompson returned downstairs.

M.G. testified that she fell asleep after Tuma put her to bed. Then M.G. "awoke to the feeling of someone having sex with [her]." She lay still, unable to respond. Twenty to thirty seconds later, Tuma and a "couple other . . . guys" entered the room, the intercourse stopped, and the guy "jumped off" her. M.G. continued lying in bed, "almost in shock." Tuma asked M.G. if she was okay. M.G. felt confused and sleepy and returned to sleep.

M.G. testified that she woke up at 7:30 a.m., at which time she recalled the previous night's events. She felt "awful," and started crying. Tuma told M.G. what had happened to M.G. the night before. M.G., who was menstruating, tried to remove her tampon, but could not because it was lodged inside of her. She went to urgent care to have the tampon removed and to receive the morning-after pill.

Later that evening, M.G. reported the incident to the Coon Rapids Police Department. A sexual assault nurse who interviewed M.G. testified that M.G. reported falling asleep and waking up to someone having sex with her. The nurse also testified that M.G. reported that she did not remember much about the incident. Lieutenant Orlando, with the Anoka County Sheriff's Office, testified that M.G. told her that M.G. had woken up to the feeling of a man having sex with her.

Cao testified in his own defense. He claimed that he spent the evening "bar hopping" downtown and after arriving at the party he consumed one or two additional shots of liquor. Because he felt "wobbly and very dizzy," he went upstairs to lie down in Tuma's bedroom. He did not block the door with a vacuum cleaner. Cao "dozed off" and awoke to find a woman lying next to him. The two started whispering. Cao felt hot, so he took off his shirt. The two began "kissing, touching, [and] fondling." The woman began undressing, and the two had "sexual contact." The woman was able to talk, was cooperative, and "very responsive." Cao became tired and unable to continue the sexual contact, so he put his boxers on. The woman gave him her phone number and they both dozed off. Some time thereafter, Tuma and others entered the room and began yelling at Cao. Cao said he and the woman were "just . . . talking." M.G. said nothing. Cao went downstairs and subsequently left the party.

Cao called Tuma the day after the party. He did not know M.G.'s name but told Tuma that he and the woman in Tuma's bedroom had talked, started kissing, and had sex. Cao did not respond when Tuma asked how her bedroom door became blocked with the vacuum cleaner. Cao also spoke to Freeman within a day or two after the incident and told him a similar story.

The jury found Cao guilty of one count each of third-and fourth-degree criminal sexual conduct. The court denied Cao's motion for a new trial and sentenced him to a presumptive sentence of 41 months for third-degree criminal sexual conduct. On appeal, Cao argued that there was insufficient evidence to support his conviction; that his trial counsel was ineffective, in part because he never introduced records showing that Cao had M.G.'s phone number in his cell phone; and that the prosecutor committed misconduct when the prosecutor told the jury it could convict based on the complainant's uncorroborated testimony. The court of appeals reversed Cao's conviction, concluding that the prosecutor's statement amounted to prosecutorial misconduct in the form of plain error affecting Cao's substantial rights. *State v. Cao*, No. A08–1932, 2009 WL 2595967 *2–

*4 (Minn.App. Aug. 25, 2009). We accepted review on the issue of whether the prosecutor committed misconduct for stating during closing argument: "The law in this state does not require corroboration. You can find a person guilty of criminal sexual conduct just on a victim's testimony alone. But there was plenty of corroboration in this case."

■■■ Cao did not object to the prosecutor's statement at trial, and therefore we review his claim of prosecutorial misconduct for plain error. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn.2006). A plain error occurs when: (1) there was error; (2) that was plain; and (3) the error affected the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Under this test, an unobjecting defendant bears the burden of demonstrating that the prosecutor's conduct constitutes an error that was plain. *Ramey*, 721 N.W.2d at 302. The burden then shifts to the State to demonstrate that the conduct did not affect the defendant's substantial rights. *Id.* Finally, if all three prongs of the test are satisfied, the court determines whether to address the error to ensure fairness and integrity in judicial proceedings. *Id.*

■■■ An error is "plain" if it is clear or obvious. *Id.* Typically, a plain error contravenes case law, a rule, or a standard of conduct. *Id.* As we explained in *Ramey*, improper conduct by a prosecutor amounts to plain error when a prosecutor engages in clearly proscribed conduct. We turn to the question of whether the statements made by the prosecutor are clearly proscribed by case law, rule, or a standard of conduct.

■■■ The court of appeals held, and Cao argues, that the prosecutor's statement was plain error. *Cao*, 2009 WL 2595967, at *2, *4. First, the court concluded, and Cao asserts, that the statement improperly instructed the jury on the law. *Id.* at *2 ("Because the district court is responsible for providing the jury with the instructions on the law necessary for rendering a verdict, the prosecutor's remarks constituted error that was plain."). The court held, and Cao suggests, that such instruction is improper because Minn. R.Crim. P. 26.03 provides that *the court* "shall state all matters of law ... necessary for the jury's information in rendering a verdict." *Cao*, 2009 WL 2595967, at *2. Cao contends that *State v. Olson*, 482 N.W.2d 212, 215 (Minn.1992), provided the prosecutor with "notice that it is not appropriate to read the jury a statute or inform [the jury] of law unless the issue is properly decided by the district court." Second, Cao argues that the prosecutor misstated the law,.relying for support on a published court of appeals' decision, *State v. Williams*, 363 N.W.2d 911, 914 (Minn.App.1985).

The State counters that the prosecutor's statement did not improperly instruct the jury on the law. The State contends that Minn. R.Crim. P. 26.03 requires courts to instruct juries but does not ban prosecutors from making accurate statements of law "congruent with the jury instructions." The State further. observes that prosecutors often reference accurate statements of law during closing arguments. Furthermore, the State notes that the statement was not an instruction but "merely a spring board for evidentiary argument."

We conclude that the prosecutor's statement was not plain error because when read in context, it was not tantamount to a jury instruction. The prosecutor used the statement as a springboard for a discussion on the strength of the corroborative evidence in the case. The prosecutor did not argue that the jury should convict Cao based on M.G.'s uncorroborated testimony nor did the prosecutor mention the corrob-

oration issue again. Additionally, the argument that the statement violates Minn. R.Crim. P. 26.03, subd. 18(5) (2009), is unpersuasive. The rule provides:

> (5) *Contents of Instructions.* In charging the jury the court shall state all matters of law which are necessary for the jury's information in rendering a verdict and shall inform the jury that it is the exclusive judge of all questions of fact. The court shall not comment on the evidence or the credibility of the witnesses, but may state the respective claims of the parties.

By its plain language, the rule imposes obligations and limitations on courts, not restrictions on prosecutors. We conclude that because the statement was merely rhetorical and does not violate Rule 26.03, Cao failed to show that the prosecutor erred because his statement "instructed the jury."

■ Still, it is worth noting, as Cao and the court of appeals point out, that it is solely the responsibility of the court to instruct juries on the law necessary to render a verdict. Courts routinely instruct juries that "If an attorney's argument contains any statement of law that differs from the law I give you, disregard the statement." 10 Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Criminal,* CRIMJIG 3.11 (5th ed.2009). Attorneys may reference the law during trial. *See, e.g., State v. Austin,* 332 N.W.2d 21, 24–25 (Minn.1983) (holding that the State's characterization of duty-to-retreat law was correct). But such references run the risk of misstatements by attorneys during trial that may require the court to issue curative jury instructions.

*See, e.g., State v. Pendleton,* 759 N.W.2d 900, 912–13 (Minn.2009) (holding that a prosecutor's disparagement of defense during closing argument was improper but did not warrant reversal because the court issued a curative instruction). But as noted above, because the statement here is not tantamount to a jury instruction, a curative instruction was likely unnecessary.

■ The next question is whether the statement made by the prosecutor is plain error because it misstated the law. The State asserts that the statement was a correct statement of the law and relies on Minn.Stat. § 609.347, subd. 1 (2008), which provides in part: "In a prosecution [for criminal sexual conduct] . . . the testimony of a victim need not be corroborated." The State also cites to four unpublished opinions of the court of appeals that conclude that a prosecutor does not commit plain error by mentioning that in criminal sexual conduct cases there is no need for corroboration of victim testimony.[1]

In response, Cao argues that Minn.Stat. § 609.347, subd. 1, is an improper attempt by the Legislature to regulate evidentiary matters and matters of trial and appellate procedure. Cao further claims that in *State v. Olson,* we signaled prosecutors that they may not discuss the weight to be given uncorroborated victim testimony without first getting court approval. In *State v. Olson,* we did make clear that the courts, not the Legislature, are primarily responsible under separation of powers for regulating evidentiary matters and trial procedure. Instructing (and arguing to) a jury on the weight to give to uncorroborated victim testimony overemphasizes a

---

1. *State v. Hanson,* No. A03–1020, 2004 WL 1557591 (Minn.App. July 13, 2004), *rev. denied* (Minn. Oct. 19, 2004); *State v. Smith,* No. C7–98–1956, 1999 WL 538150 (Minn. App. July 27, 1999), *rev. denied* (Minn. Oct. 21, 1999); *State v. Walker,* No. C7–95–1165, 1996 WL 56519 (Minn.App. Feb. 13, 1996), *rev. denied* (Minn. Mar. 19, 1996); *State v. Maldonado,* No. C7–88–1941, 1989 WL 49251 (Minn.App. May 16, 1989).

victim's testimony and may inadvertently alter the state's burden of proof.

■ We have held that a conviction may be based on a single person's testimony. *See State v. Landa,* 642 N.W.2d 720, 725 (Minn.2002) ("Eye witness testimony, standing alone, can support a guilty verdict."); *State v. Foreman,* 680 N.W.2d 536, 539 (Minn.2004) ("We have stated that 'a conviction can rest on the uncorroborated testimony of a single credible witness.'") (quoting *State v. Hill,* 285 Minn. 518, 518, 172 N.W.2d 406, 407 (1969)). In other words, it is settled law that when we engage in appellate review for the sufficiency of the evidence, it *may* be sufficient to convict on the uncorroborated testimony of a complainant. What is less clear is whether the jury can or should be told that the testimony of a witness need not be corroborated in order to find the defendant guilty.

Our only case touching on this issue is *State v. Fields,* 730 N.W.2d 777 (Minn. 2007). In *Fields,* the district court, over objection by defense counsel, instructed the jury that the testimony of a victim need not be corroborated. On appeal, we were not asked to decide whether the instruction regarding corroboration was erroneous, because for purposes of the appeal the State conceded that it was error to give the instruction. *Id.* at 785.

Ultimately, there is no conclusive statement in our case law prohibiting a prosecutor from stating that a victim's testimony need not be corroborated in a criminal sexual conduct case. It cannot be said that the prosecutor plainly erred by contravening settled law. Accordingly, we agree with the State and hold that the prosecutor's brief reference in closing argument that a witness's testimony need not be corroborated was not plain error.

■ Even if we assume that the prosecutor's statement constituted plain error, we conclude that the error did not affect Cao's substantial rights. A plain error affects a defendant's substantial rights if it was prejudicial and affected the outcome of the case. *Griller,* 583 N.W.2d at 741. An error is prejudicial if there is a reasonable likelihood that the error had a significant effect on the jury's verdict. *Id.* On review, we consider the strength of evidence against the defendant, the pervasiveness of improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions. *State v. Davis,* 735 N.W.2d 674, 682 (Minn.2007). When determining whether prosecutorial misconduct occurred during a closing argument, we review the closing argument as a whole. *State v. Walsh,* 495 N.W.2d 602, 607 (Minn.1993). The State bears the burden of showing that a plain error did not affect the defendant's substantial rights. *Ramey,* 721 N.W.2d at 302.

We conclude that the State met that burden for several reasons. First, the evidence against Cao is strong. Substantial evidence corroborates M.G.'s physical helplessness during the sexual conduct. M.G. testified that she fell asleep after consuming too much alcohol and awoke to find an unknown man having sex with her. Four witnesses testified that M.G. was asleep or nonresponsive when they entered the bedroom and saw Cao in bed with M.G. The testimony of both the sexual assault nurse and police lieutenant confirm that M.G. reported being asleep and awakening to the "feeling of someone having sex with her." Testimony that M.G. required medical assistance to remove her tampon further supports that sexual intercourse was nonconsensual because it is unlikely that a woman would have sex without first removing a tampon. Further strengthening the evidence, three witnesses testified that an object blocked the door to the bedroom

where M.G. slept. M.G.'s emotional reaction the next morning and prompt police report further corroborate her physical helplessness during the sexual conduct. *See State v. DeBaere*, 356 N.W.2d 301, 304 (Minn.1984) (noting that a complainant's prompt police report and "distraught condition" in talking with police was corroborative of sexual assault).

The evidence Cao offers in response is weak. Cao admits to having had sex with M.G., but argues that M.G. gave him her phone number, which shows that she consented and was conscious during the sexual conduct. But Cao could have obtained the number elsewhere, and it is difficult to determine when the number was entered into Cao's phone. Moreover, Cao gave changing accounts of what happened with M.G., and the day after the incident he did not know M.G.'s name. Given the strong and largely unrebutted evidence against Cao, the prosecutor's statement was likely inconsequential to the verdict.

Second, the prosecutor's statement was not pervasive. The statement covers three lines of a 15–page closing argument. The prosecutor did not argue that the jury should convict Cao based on M.G.'s testimony but rather used the statement as a rhetorical device to introduce corroborative evidence. The prosecutor mentioned the corroboration issue only once during the entire trial. Cursory and isolated, the statement simply cannot be classified as "pervasive."

■ Finally, Cao had an opportunity to address any error regarding the prosecutor's statement. During closing argument, Cao's attorney told the jury not to be swayed by the "emotional situation" that M.G.'s testimony created. The defense attacked M.G.'s credibility by noting that the sexual assault nurse who interviewed M.G. testified that M.G. had "memory problems" and was not "remembering well . . . [or] clearly." Cao also attempted to argue on appeal that M.G. may have blacked out but appeared to remain functioning, leading Cao to believe she consented to sexual contact.[2] Because Cao had opportunities to rebut the prosecutor's statement by addressing M.G.'s credibility, memory, and mental state, the final *Davis* factor also weighs against Cao.

We conclude that any error did not affect Cao's substantial rights because there is no reasonable likelihood that the prosecutor's statement had a significant effect on the verdict. Ultimately, the evidence against Cao is strong. The prosecutor's statement, when read in context of the entire closing argument, is nonpervasive, and Cao had an opportunity to rebut any impropriety the statement caused. Based on the *Davis* factors, the absence of any error would not have significantly affected the jury's verdict and is not prejudicial. Thus, we hold that the State has met its burden in showing that any error that may have occurred did not affect Cao's substantial rights.

Reversed and remanded to the court of appeals for consideration of remaining issues.

STRAS, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

2. Cao supports this argument citing a National Institute on Alcohol Abuse and Alcoholism article. The State moved to strike the article as evidence outside the record. We grant the State's motion pursuant to Minn. R. Civ.App. P. 110.01, which requires that only papers filed in the trial court, exhibits, and transcripts of proceedings, if any, shall constitute the record on appeal.