STATE of Minnesota, Respondent,

v.

Sharon Karen WILSON, Appellant.

No. A11–1041.

Supreme Court of Minnesota.

May 22, 2013.

Lori Swanson, Attorney General, Saint Paul, MN; and Susan L. Segal, Minneapolis City Attorney, Jennifer Saunders, Assistant Minneapolis City Attorney, Minneapolis, MN, for respondent.

William M. Ward, Chief Hennepin County Public Defender, Kellie Charles, Assistant Hennepin County Public Defender, Minneapolis, MN, for appellant.

## OPINION

WRIGHT, Justice.

Appellant Sharon Wilson was convicted of fleeing a peace officer by means other than a motor vehicle, Minn.Stat. § 609.487, subd. 6 (2012), after she ran from a police officer who was responding to a stabbing at a bar in Minneapolis. The issue arising

from the State's prosecution of Wilson is whether this offense is a specific-intent or a general-intent crime. Wilson argued in a pretrial motion that she was entitled to a voluntary intoxication jury instruction because section 609.487, subdivision 6, contains a specific-intent requirement. The district court denied the motion, ruling that the offense is a general-intent crime. After the court of appeals affirmed the district court's decision, we granted Wilson's petition for further review. For the reasons addressed below, we conclude, contrary to the decision of the court of appeals, that section 609.487, subdivision 6, contains a specific-intent requirement. However, because any failure to instruct the jury on voluntary intoxication in this case was harmless beyond a reasonable doubt, we affirm.

On September 19, 2010, Officer Jeffrey Imming of the Minneapolis Police Department was working near Sunny's Bar on the corner of Chicago Avenue and Lake Street in Minneapolis. Imming had been hired by the Chicago/Lake business district to patrol the neighborhood.[1] At approximately 1:50 a.m., the manager of Sunny's Bar reported a disturbance to Imming. A surveillance video depicting much of the disturbance was admitted as evidence at trial. When Imming entered the bar, he observed a commotion and radioed for assistance. The crowd eventually moved outside the bar. Imming discovered that a man in the crowd had been stabbed in the back multiple times. Friends of the stabbing victim directed Imming's attention to the alleged perpetrator, Demario Lawrence, who was with Wilson outside the bar.

At Wilson's trial, Imming testified that he told Lawrence and Wilson to "come here" because he needed to talk to them.

Lawrence and Wilson ignored Imming. Because he believed that a knife was involved in the altercation, Imming took his gun from its holster and held it on the side of his leg. Imming again gave several commands directing Lawrence and Wilson to "come here." Imming gave his commands in an increasingly loud voice, eventually yelling, as he described, "[a]t the top of my lungs." While doing so, Imming was approximately 10 feet from Lawrence and Wilson, and he made eye contact with both of them. After several commands from Imming, Lawrence and Wilson ran. Imming chased them.

Lawrence fell after running about one-half block. As Lawrence fell, Imming saw and heard a knife hit the ground. Lawrence got up and continued running. Imming testified that he then saw Wilson stop, pick up the knife, and resume running. As Imming tried to tackle Wilson, Imming fell and shattered his ankle.

Sergeant Jeffry Jindra also was present at the scene. He observed both Imming's chase and fall. Jindra also observed Wilson bend down during the chase. Jindra then chased Lawrence on foot and arrested him near an alley. Wilson approached Jindra after Jindra had secured Lawrence. She appeared "very confused" and "nervous," with a "different look on her face." Jindra, who is trained to observe signs of impairment, testified that Wilson smelled like she had been drinking an alcoholic beverage. Wilson did not attempt to flee from Jindra. But Jindra testified that if Wilson had continued running, an officer would not have caught up with her.

Other responding officers placed Wilson under arrest. An officer searched Wilson for the knife, but it was not found in her possession. Officers could not locate the

---

1. Wilson does not dispute that, although Imming was off-duty while working for the Chi-  cago/Lake business district, Imming retained his authority as a peace officer.

knife immediately after the incident. But during a later search, police recovered the knife from a window well approximately 15 feet from where Wilson was apprehended.

The State of Minnesota charged Wilson with one count of fleeing a peace officer by means other than a motor vehicle (hereinafter "fleeing by other means"), in violation of Minn.Stat. § 609.487, subd. 6. Before trial, Wilson moved for a voluntary intoxication jury instruction, arguing that the charged offense is a specific-intent crime. The district court denied the motion, reasoning that fleeing by other means is a general-intent crime.

The district court ruled that Wilson could question Jindra about her intoxication and make an offer of proof as to the instruction so as to preserve the issue for appeal. Wilson's offer of proof included: (1) Officer Christopher Cushenbery's statement in a police report that Wilson was "intoxicated and was also belligerent" when she was arrested; and (2) a proffer that Wilson would have testified that she was at a bar until approximately 1:45 a.m., and "[t]here would be evidence of alcohol consumption and its ability to limit certain perceptions or conceptual things within [her] range about what did or didn't happen." Because the district court concluded that fleeing by other means is a general-intent crime, the district court did not rule on whether Wilson's offer of proof was sufficient to entitle her to a voluntary intoxication jury instruction. Following a jury trial, Wilson was convicted of the charged offense. Wilson appealed.

The court of appeals affirmed Wilson's conviction, holding that fleeing by other means is a general-intent crime. *State v. Wilson,* 814 N.W.2d 60, 64 (Minn.App. 2012). In doing so, the court of appeals cited *State v. Fleck,* 810 N.W.2d 303, 308–309, 312 (Minn.2012), in which we considered the type of intent required for two

forms of assault—assault-harm and assault-fear—defined in Minn.Stat. § 609.02, subd. 10 (2012). *Wilson,* 814 N.W.2d at 63. The court of appeals compared the crime of fleeing by motor vehicle, Minn. Stat. § 609.487, subd. 3 (2012), with fleeing by other means, Minn.Stat. § 609.487, subd. 6, and reasoned,

> if the legislature had wanted two other analogous statutory provisions (attempting to elude a peace officer with a motor vehicle and attempting to elude a peace officer by some other means) both to be specific-intent crimes, it would have used "with intent to" or some other language specified in Minn.Stat. § 609.02, subd. 9(1), in both provisions.

*Id.* at 63–64. The court of appeals also rejected Wilson's argument that "purpose" is synonymous with the word "intent" in the fleeing by other means statute, reasoning that "purpose," when used in the fleeing by other means statute, "identifies certain perpetrators: it does not describe them as having a certain intent." *Id.* at 63–64 & n. 1. Wilson petitioned for further review, which we granted.

I.

The question presented is a question of statutory interpretation, which we review de novo. *Fleck,* 810 N.W.2d at 307. Under Minnesota Statutes section 609.487, subdivision 6:

> Whoever, for the purpose of avoiding arrest, detention, or investigation, or in order to conceal or destroy potential evidence related to the commission of a crime, attempts to evade or elude a peace officer, who is acting in the lawful discharge of an official duty, by means of running, hiding, or by any other means except fleeing in a motor vehicle, is guilty of a misdemeanor.

Our analysis focuses on the following language of the statute: "for the purpose of

avoiding arrest, detention, or investigation, or in order to conceal or destroy potential evidence related to the commission of a crime." *Id.* If this language creates a specific-intent requirement and if Wilson met the requirements for a voluntary intoxication jury instruction, an instruction in accordance with Minn.Stat. § 609.075 (2012) should have been given.

■ Section 609.075 provides:

An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind.

By its plain language, section 609.075 applies when a defendant is charged with a specific-intent crime. *See Fleck,* 810 N.W.2d at 307. We apply common law principles when determining whether a statute is a general-intent or a specific-intent crime. *See id.* at 308; *State v. Lindahl,* 309 N.W.2d 763, 766 (Minn.1981).

■ A criminal statute that simply prohibits a person from voluntarily engaging in the prohibited conduct establishes a general-intent crime. *Fleck,* 810 N.W.2d at 308. For a general-intent crime, "it is enough that the offender intend to do the act proscribed. It is not necessary that he intend the resulting harm or know that his conduct is criminal. So long as the offender has voluntarily done the act, the crime has been committed." 9 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice—Criminal Law and Procedure* § 44.3 (4th ed.2012).

■ A specific-intent crime, however, requires more. "[A] specific-intent crime requires an 'intent to cause a particular result.'" *Fleck,* 810 N.W.2d at 308 (quoting McCarr & Nordby, *supra,* § 44.3).

"'[T]he most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime.'" *Id.* (quoting 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e) (2d ed.2003)).

■ Our inquiry as to whether section 609.487, subdivision 6, includes a specific-intent element requires us to interpret the statute so as to "ascertain and give effect to the Legislature's intent." *Sanchez v. State,* 816 N.W.2d 550, 556 (Minn.2012). If the Legislature's intent is clear from the plain and unambiguous language of section 609.487, subdivision 6, we apply the statute's plain meaning without engaging in any further construction. *State v. Leathers,* 799 N.W.2d 606, 608 (Minn.2011). In doing so, we interpret the statute in a manner that renders no part of it meaningless. *See State v. Orsello,* 554 N.W.2d 70, 74 (Minn.1996) (observing the absence of mental state language codified at section 609.02, subdivision 9, but interpreting statutory language at issue to determine whether the statute required general or specific intent), *superseded by statute on other grounds; see also* Minn.Stat. § 645.16 (2012).

■ The statute at issue here, fleeing by other means, requires proof that the defendant attempted to evade or elude a peace officer by means of running, hiding, or by any other means *"for the purpose* of avoiding arrest, detention, or investigation, or in order to conceal or destroy potential evidence related to the commission of a crime." Minn.Stat. § 609.487, subd. 6 (emphasis added). The word "purpose" is synonymous with "intention" and is defined as the "result or an effect that is intended or desired." *American Heritage Dictionary* 1471 (3d ed.1996). Further, the phrase "in order to" is synonymous with the phrase "[f]or the purpose of." *Id.*

at 1273. Section 609.487, subdivision 6, therefore requires the commission of a prohibited physical act with a specific intention to avoid arrest, detention, or investigation, or to conceal or destroy potential evidence related to the commission of a crime—that is, an intention to cause a particular result. The statute's required intent is in addition to any mental element that applies to the statute's act requirement. *See* Minn.Stat. § 609.487, subd. 6. Under the plain language of section 609.487, subdivision 6, therefore, the crime of fleeing by other means is a specific-intent crime.

We reject the State's argument that the statutory phrase "for the purpose of" identifies a certain class of perpetrators rather than a specific intent that a perpetrator must possess. To the extent the language describes a class of perpetrators, such perpetrators are identifiable only by the *purpose* with which they act (namely, by their intent). The language used by the court of appeals belies the State's assertion that the statutory language at issue describes anything other than a specific-intent requirement. The court of appeals described those who violate section 609.487, subdivision 6, as those who *"want* [ ] to avoid arrest, detention, or investigation, or to conceal or destroy evidence." *Wilson*, 814 N.W.2d at 64 (emphasis added). By this definition, the State must prove beyond a reasonable doubt that the defendant acted with the specific intent to cause a particular result—namely, the avoidance of arrest, detention, or investigation or the concealment or destruction of potential evidence related to the commis-

sion of a crime. Minn.Stat. § 609.487, subd. 6.

The State nonetheless contends that fleeing by other means is not a specific-intent crime because it does not contain the mental state language found in Minn. Stat. § 609.02, subd. 9(1) (2012).[2] We need not decide whether the language of section 609.02, subdivision 9(1), is the means by which the legislature ordinarily designates a specific-intent requirement. The focus of our analysis is the contested language in section 609.487, subdivision 6, which plainly creates a specific-intent requirement. Accordingly, we hold that fleeing by other means as defined in Minn. Stat. § 609.487, subd. 6, is a specific-intent crime.

## II.

In light of our conclusion that section 609.487, subdivision 6, contains a specific-intent requirement, we next consider whether Wilson was entitled to a jury instruction on the issue of voluntary intoxication.[3] A party must satisfy the burden of production before that party is entitled to a voluntary intoxication jury instruction. *See State v. Torres*, 632 N.W.2d 609, 616 (Minn.2001). A burden of production refers to the duty of a party to introduce enough evidence on an issue to have that issue decided by the fact-finder. *Black's Law Dictionary* 209 (8th ed.2004); *see also Braylock v. Jesson*, 819 N.W.2d 585, 590 (Minn.2012) (describing a burden of production). If there is enough evidence to support a party's theory of the case, a party is entitled to an instruction on that theory. *State v. Ruud*, 259

---

**2.** Section 609.02, subdivision 9(1), provides that "[w]hen criminal intent is an element of a crime ..., such intent is indicated by the term 'intentionally,' the phrase 'with intent to,' the phrase 'with intent that,' or some form of the verbs 'know' or 'believe.' "

**3.** Because the district court and the court of appeals concluded that fleeing by other means requires only general intent, neither court reached this question.

N.W.2d 567, 578 (Minn.1977).[4] When "deciding whether an instruction is warranted, we, like the trial court, must view the evidence in the light most favorable to the defendant." *State v. Radke*, 821 N.W.2d 316, 328 (Minn.2012).

■ However, we have not expressly discussed the district court's duty to view the evidence in a light most favorable to the defendant in the context of a voluntary intoxication jury instruction. For instance, in *Torres*, 632 N.W.2d at 616, we stated that

> to receive a requested voluntary intoxication jury instruction: (1) the defendant must be charged with a specific-intent crime; (2) there must be evidence sufficient to support a jury finding, by a preponderance of the evidence, that the defendant was intoxicated; and (3) the defendant must offer intoxication as an explanation for his actions.

We now articulate that which is implied by our legal standard for deciding whether a voluntary intoxication jury instruction is warranted—the second prong of this standard must be evaluated by considering the evidence in a light most favorable to the defendant.[5] *See City of Minneapolis v. Altimus*, 306 Minn. 462, 472, 238 N.W.2d 851, 858 (1976) (considering the "[d]efendant's evidence" when deciding whether the defendant introduced enough evidence to raise an involuntary intoxication defense).

Failure to view the evidence in a light most favorable to the defendant conflates the defendant's burden of production, which must be satisfied before the defendant is entitled to an instruction on voluntary intoxication, and the defendant's burden of persuasion, which must be satisfied in order for the defendant to prevail before the jury. *See State v. Voorhees*, 596 N.W.2d 241, 250 n. 2 (Minn.1999) (noting that whether a defendant has met his burden so as to be entitled to a jury instruction on involuntary intoxication and wheth-

4. The question of whether a party has satisfied her burden of production is distinct from the question of whether a party can satisfy her burden of persuasion, which is to satisfy her "duty to convince the fact-finder to view the facts in a way that favors that party." *Black's Law Dictionary* 209 (8th ed.2004); *see also Braylock*, 819 N.W.2d at 590 (stating that the burden of persuasion "is the obligation to persuade the trier of fact of the truth of a proposition"). With respect to a defendant's burden of *persuasion* in the context of voluntary intoxication, our case law is clear. We have consistently held that a defendant bears the burden of establishing intoxication that prevented her from forming intent by a fair preponderance of the evidence. *State v. Wahlberg*, 296 N.W.2d 408, 419 (Minn.1980) (rejecting defendant's argument that "putting the burden on the defendant to show that his intoxication negated the intent to commit the crime[] violates due process"); *City of Minneapolis v. Altimus*, 306 Minn. 462, 472, 238 N.W.2d 851, 858 (1976) ("In the case of voluntary intoxication, the defendant must establish the defense by a fair preponderance of the evidence."); *State v. Grear*, 29 Minn. 221, 225, 13 N.W. 140, 142 (1882) ("[T]he burden of proving such drunkenness is on the defendant, and he must establish it by a fair preponderance of evidence."). The State retains the ultimate burden of proving the defendant's intent beyond a reasonable doubt. *See Torres*, 632 N.W.2d at 615 n. 2; *Wahlberg*, 296 N.W.2d at 419. We have indicated that this allocation of the burden of persuasion does not violate principles of due process. *Wahlberg*, 296 N.W.2d at 419. We acknowledge that this conclusion has been the subject of criticism. 9 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice—Criminal Law and Procedure* § 47.19 (4th ed.2012). However, Wilson has not argued that requiring her to bear the burden of persuasion is unconstitutional. The issue, therefore, is not before us.

5. In *Torres*, we assumed without deciding that the defendant had satisfied the second prong of this test and therefore did not apply this prong to the facts in *Torres*. 632 N.W.2d at 616.

er the defendant has met his burden of proving the elements of the defense before the trier of fact "are two separate inquiries"). If when evaluating whether a defendant is entitled to a voluntary intoxication jury instruction, a court does not view the evidence in a light most favorable to the defendant, that court infringes on the role of the jury. *See State v. Reese,* 692 N.W.2d 736, 741 (Minn.2005) (noting that the assessment of witness credibility and the weight to be to be given to witness testimony is a jury function); *see also State v. Strege,* 116 Wis.2d 477, 343 N.W.2d 100, 103, 107 (1984) (viewing the evidence adduced at trial " 'in the light most favorable to the defendant' " when determining whether the defendant was entitled to a voluntary intoxication jury instruction and observing that the court "must assume the truthfulness of the defendant's statements regarding the drugs he had taken and their effect on his mind" (quoting *Larson v. State,* 86 Wis.2d 187, 271 N.W.2d 647, 650 (1978))).

■ When viewed in a light most favorable to Wilson, the evidence, including that presented through Wilson's offer of proof, demonstrates the following. After running away from Imming, Wilson approached Jindra and seemed "very confused" and "nervous," and had a "different look on her face." Jindra, who is trained to observe indicia of impairment, observed that Wilson smelled like she had been consuming alcohol. In addition, Cushenbery's police report[6] stated that Wilson was "intoxicated," "belligerent," as well as "un-cooperative" at the time of her arrest. Wilson also proffered that she would have testified that "she was at a bar, until ap-

proximately 1:45" and that "[t]here would be evidence of alcohol consumption and its ability to limit certain perceptions or conceptual things ... about what did or didn't happen" at the time of the incident.

■ Evidence that Wilson smelled like she had been consuming alcohol, was "intoxicated," and had been at a bar drinking alcohol, without more, is insufficient to warrant a jury instruction on voluntary intoxication because "[t]he mere fact of a person's drinking does not create a presumption of intoxication, and the possibility of intoxication does not create the presumption that a person is incapable" of forming a specific intent. *Wahlberg,* 296 N.W.2d at 418 (citing *State v. Lund,* 277 Minn. 90, 92, 151 N.W.2d 769, 771 (1967)). But we must view this evidence in conjunction with Jindra's testimony that Wilson looked "very confused" and had a "different look on her face," as well as Wilson's proffer regarding the ability of alcohol to "limit certain perceptions or conceptual things within [her] range about what did or didn't happen," which, at this stage in our analysis, we must assume the jury would have believed. We conclude that, viewing the evidence in a light most favorable to Wilson, Wilson satisfied her burden of production on her claim of voluntary intoxication.

We also conclude that Wilson "offered intoxication as an explanation for [her] actions." *Torres,* 632 N.W.2d at 616. Wilson requested a voluntary intoxication jury instruction and made an offer of proof to support her theory that she was so intoxicated that she was unable to form intent. Her offer of proof included a statement that she would have testified as

---

**6.** The State argues on appeal that the jury could not have considered Cushenbery's police report because it is inadmissible hearsay. However, the State did not object to the admissibility of the police report at trial, and

generally a party cannot object to the admissibility of evidence for the first time on appeal. *See State v. Taylor,* 270 Minn. 333, 339, 133 N.W.2d 828, 832 (1965).

to the effect alcohol had on her ability to perceive what happened on the night of the incident at Sunny's Bar. *Cf. id.* at 616–17 (concluding that defendant did not offer intoxication as an explanation for his actions when defendant only referenced intoxication when lying about his involvement in the crime and when the defendant ultimately described to law enforcement the "actions of all participants lucidly and precisely, without any reference to his own intoxication"); *State v. Lopez,* 587 N.W.2d 26, 29 (Minn.1998) ("Lopez's failure to present any evidence of intoxication, beyond some possible drinking, constitutes a failure to offer intoxication as an explanation for his actions."). Therefore, we conclude that the district court erred by failing to instruct the jury on voluntary intoxication.

### III.

■ Because we conclude that the district court erred by failing to instruct the jury on voluntary intoxication, we next consider whether the error was harmless. When analyzing whether Wilson met her burden of production so as to be entitled to a voluntary intoxication jury instruction, we viewed the evidence in a light most favorable to Wilson. *See supra* Part II. But when examining whether the error was harmless, we no longer do so. Rather, we evaluate all of the evidence presented at trial to determine whether the evidence establishing that Wilson formed the requisite intent is so overwhelming that the instructional error was harmless beyond a reasonable doubt. *State v. Koppi,* 798 N.W.2d 358, 365–66 (Minn.2011). If we conclude beyond a reasonable doubt that the omission of the requested jury instruction did not have a significant impact on the verdict, we will not reverse the conviction. *Id.* at 364; *State v. Lee,* 683 N.W.2d 309, 316 (Minn.2004) (citing *State*

*v. Shoop,* 441 N.W.2d 475, 480–81 (Minn. 1989)).

■ We conclude beyond a reasonable doubt that the omission of a voluntary intoxication jury instruction did not have a significant impact on the verdict at issue here. First, the omitted voluntary intoxication jury instruction does not articulate an element of the offense. Rather, it tells the jury how it may consider evidence of intoxication when determining whether the defendant formed the requisite intent. The nature of the instructional error presented here makes it less likely that the error significantly impacted the verdict, especially because the jury was not affirmatively instructed on an incorrect view of the law. *Cf. Koppi,* 798 N.W.2d at 364–65 (concluding that an erroneous jury instruction was not harmless when the instruction deviated "so substantially" from the applicable law defining an element of the offense that it was "difficult to determine the impact of the erroneous instruction").

Second, the evidence that Wilson acted with the requisite intent is overwhelming. Wilson ran from Imming after he made eye contact with her and directed her to "come here." Imming testified that, during the chase, Wilson stopped, picked up the knife that Lawrence had dropped, and resumed running. Jindra's testimony corroborated Imming's testimony regarding Wilson's actions during her attempt to flee. The knife was later recovered from a hidden location. This evidence provides strong support for the conclusion that Wilson acted with the purpose of avoiding arrest, detention, or investigation, or to conceal potential evidence of a crime. In addition, Cushenbery's report states that Wilson "threaten[ed] officers that she would get [them] fired," "complained that she was touched inappropriately while being searched by both male and female officers," and refused to identify herself to

police. This conduct is additional evidence that Wilson was acting in a manner that reflected a coherent, albeit obstinate, state of mind. The video evidence of Wilson's behavior during the incident also bears on whether the omission of the voluntary intoxication jury instruction had a significant impact on the verdict. The video shows that, at the time of the altercation, Wilson was walking and moving in a controlled and coordinated manner without observable physical signs of intoxication. This evidence provides additional support for the conclusion that Wilson was capable of forming, and did form, the requisite intent.

When the evidence presented at trial is considered in its entirety, there is overwhelming evidence that Wilson acted with the requisite intent. Wilson, therefore, could not have prevailed on her voluntary intoxication claim. We, therefore, conclude beyond a reasonable doubt that the omission of the voluntary intoxication jury instruction did not have a significant impact on the verdict. We acknowledge that evidence was presented at trial that Wilson was intoxicated and confused, and that Wilson's proffer included evidence that alcohol "limit[ed] certain perceptions" by Wilson about what occurred during and after the altercation. But this evidence does not alter our conclusion that, when we consider the evidence presented at trial in its entirety, the only reasonable conclusion is that Wilson acted with the intent to avoid arrest, detention, or investigation, or to conceal potential evidence of crime. *See In re W.J.R.*, 264 N.W.2d 391, 394 (Minn. 1978) (concluding that offer of proof would not have changed the result when the offer of proof "was conclusory in its characterization of the [evidence]" and when "no specifics were offered").

In light of the record in this case, we conclude beyond a reasonable doubt that the omission of the voluntary intoxication jury instruction did not significantly affect the verdict. *See Koppi,* 798 N.W.2d at 364. We, therefore, affirm Wilson's conviction.

Affirmed.

ANDERSON, Justice PAUL H. (concurring in part, dissenting in part).

I concur with the majority's conclusion that the offense of fleeing a peace officer by a means other than a motor vehicle as defined by Minn.Stat. § 609.487, subd. 6 (2012), is a specific-intent crime. I also agree that the district court erred when it failed to instruct the jury on voluntary intoxication. But I disagree with the majority that the court's error was harmless beyond a reasonable doubt. Therefore, I respectfully dissent.

The majority concludes that evidence presented at trial overwhelmingly establishes beyond a reasonable doubt that the defendant, Sharon Karen Wilson, is guilty as charged. In other words, the majority concludes that there is sufficient evidence to meet our very high standard for determining when an error is harmless. For an error to be harmless, we must be able to conclude "beyond a reasonable doubt 'the omission did not have a significant impact on the verdict.'" *State v. Lee,* 683 N.W.2d 309, 316 (Minn.2004) (quoting *State v. Shoop,* 441 N.W.2d 475, 481 (Minn.1989)). I conclude that this standard has not been met here.

Absent the instruction on voluntary intoxication and Wilson's ability to present evidence as to her voluntary intoxication defense, there is reasonable doubt that Wilson formed the requisite specific intent necessary to commit the criminal act of fleeing a police officer. Intoxication is relevant to explain Wilson's actions when charged with this specific-intent crime. Because the district court ruled that fleeing by other means was a general-intent

crime, Wilson was prevented from presenting her intoxication explanation to the jury.

Undoubtedly, Wilson's conduct during the early morning hours of September 19, 2010, shows that, at least on that morning, her behavior fell far below the standard we expect of an ordinary citizen—much less a model citizen. The police report indicates that Wilson was "intoxicated," "belligerent," and "un-cooperative." She even. threatened the police officers who detained her, stating that "she would get [them] fired and complained that she was touched inappropriately while being searched by both male and female officers."

But Wilson's bad behavior alone is not enough to support her conviction when under the law she is entitled to present a voluntary intoxication defense to the specific-intent crime of fleeing a police officer by means other than a motor vehicle. There is no question that Wilson exhibited several indices of intoxication. Given that Wilson was charged with a specific-intent crime and she raised a voluntary intoxication defense, she was entitled to present that defense and to have the jury receive an instruction on voluntary intoxication.

When the district court erred by treating the crime of fleeing a peace officer by means other than a motor vehicle as a general-intent crime, the jury did not have all the necessary information before it to render an informed verdict on the charged crime. Given this deficiency, I am unable to conclude beyond a reasonable doubt that the jury had the overwhelming evidence necessary to hold Wilson guilty under our harmless error standard. While the jury may have, could have, or might have reached the same verdict it did, I am unable to form a clear and firm conviction beyond a reasonable doubt that the jury would have reached the same verdict if it was properly informed. Therefore, I would reverse and remand for a new trial.

PAGE, Justice (concurring in part and dissenting in part).

I join in the concurrence and dissent of Justice Paul H. Anderson.