*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0595**

State of Minnesota,
Respondent,

vs.

Spidel Wayne Browder,
Appellant.

**Filed March 2, 2015
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-13-24713

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Stauber, Judge; and Hooten, Judge.

## U N P U B L I S H E D   O P I N I O N

**SCHELLHAS**, Judge

Appellant challenges the district court's refusal to instruct the jury on voluntary intoxication and raises additional claims in his pro se supplemental brief. We affirm.

**FACTS**

Around 8:00 p.m. on July 30, 2013, the Minneapolis Police Department dispatched officers to Loring Greenway in Minneapolis regarding a possible sexual assault underway. A witness directed the officers to a location where, according to the witness, "a female [was] getting raped." As two officers approached that location, one of the officers observed a male, later identified as Joseph Carlson, flee the scene. That officer unsuccessfully pursued Carlson and returned to the scene. The other officer approached appellant Spidel Browder. Browder was sitting with a female, J.H.B., whose dress was hiked up high on her thighs. The officer observed that J.H.B. was not wearing underpants. Browder told the officer that J.H.B. was okay, that she was just drunk, and that he was taking care of her. The officer observed that J.H.B. was limp like a ragdoll and nonresponsive. Her breathing was very shallow, and the officer was unable to find her pulse. But J.H.B. provided a sign of life when the officer pulled back her eyelids— her eyes fluttered. The officer instructed Browder to lay J.H.B. on the ground and called for an ambulance. J.H.B. did not regain consciousness until about 8:30 a.m. the next day and has no memory of the events at Loring Greenway.

While J.H.B. was unconscious, a sexual-assault nurse examined her and took skin, urine, perineal, blood, and other samples. The nurse also examined Browder and took fingernail, penile, scrotal, and blood samples. Based on the samples, a forensic scientist determined that J.H.B.'s alcohol concentration was .27 at 1:30 a.m. on July 31, 2013. Her perineal sample contained a mixture of DNA from two or more males, and Browder and

Carlson cannot be excluded as possible contributors to the mixture. Browder's penile and hand samples contained a predominant female DNA profile that matches J.H.B.

Respondent State of Minnesota charged Browder with aiding and abetting third-degree criminal sexual conduct under Minn. Stat. §§ 609.05, subd. 1, .344, subd. 1(d) (mentally or physically helpless complainant) (2012). Browder noticed defenses of consent and voluntary intoxication. At Browder's *Rasmussen* hearing, the district court heard argument on a voluntary-intoxication jury instruction and deferred its ruling. The state noticed its intent to amend the complaint to add a count of third-degree criminal sexual conduct under section 609.344, subdivision 1(d), and subsequently filed an amended complaint.

J.H.B. testified that she weighed 125 pounds, and that on July 30, 2013, she walked around downtown Minneapolis with friends, consumed about seven shots, and met Carlson and Browder. J.H.B. was not acquainted with Carlson or Browder before that day. Eventually, J.H.B.'s group of friends disbanded, leaving her alone with Carlson and Browder. J.H.B. has no memory of consenting to sexual contact with Carlson or Browder and no memory of the sexual contact.

Browder testified that on July 30, 2013, he began drinking alcohol at about 2:30 p.m. in Saint Paul and then went to Minneapolis, where he continued drinking and met Carlson and eventually a group of people that included J.H.B. He testified that after Carlson, J.H.B., and he arrived at Loring Greenway, J.H.B. approached Carlson and they began kissing. Browder also testified that J.H.B. stuck her hand in Browder's pants and underwear and that he responded by reaching up her dress and touching the outside of her

3

vagina. Browder maintained that the sexual contact was consensual. He testified that after a couple minutes, he moved away from Carlson and J.H.B. but was intoxicated and did not feel comfortable walking, so he sat down nearby. According to Browder, J.H.B. had sat next to him and was leaning against him when police arrived.

Three eyewitnesses testified about what they saw while walking through the Loring Greenway area on July 30, 2013. Collectively, they testified that they saw Browder sitting or leaning against a wall or fence and holding an unconscious or semi-unconscious woman, who was bent over at the waist with her head facing him. They saw a second man behind the woman, holding her up by the hips. The woman was limp and moaning in a manner that suggested distress or intoxication, and her clothes were pulled down or up over her waist. The second man's pants were partially down, and he was gyrating against the woman. The second man gestured to passersby to leave and attempted to reassure them that everything was fine. Browder was laughing and cursing. When one of the witnesses called 911, Browder and the second man called him a "snitch" and a "mark."

After the close of evidence, the district court denied Browder's request for a voluntary-intoxication jury instruction. The jury found Browder guilty of aiding and abetting third-degree criminal sexual conduct and acquitted him of third-degree criminal sexual conduct. The district court sentenced Browder to 74 months' imprisonment.

This appeal follows.

**D E C I S I O N**

*Voluntary-intoxication jury instruction*

The district court denied Browder's request for a voluntary intoxication jury instruction on the grounds that (1) third-degree criminal sexual conduct under section 609.344, subdivision 1(d), is not a specific-intent crime; (2) aiding and abetting is not a specific-intent crime; and (3) Browder did not offer intoxication as an explanation for his actions. Browder argues that the district court committed reversible error by refusing to instruct the jury on voluntary intoxication.

"[Appellate courts] review a trial court's refusal to issue a requested instruction for abuse of discretion, focusing on whether the refusal resulted in error." *State v. Torres*, 632 N.W.2d 609, 616 (Minn. 2001). "[W]hen a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind." Minn. Stat. § 609.075 (2012). But

> to receive a requested voluntary intoxication jury instruction:
> (1) the defendant must be charged with a specific-intent crime; (2) there must be evidence sufficient to support a jury finding, by a preponderance of the evidence, that the defendant was intoxicated; and (3) the defendant must offer intoxication as an explanation for his actions.

*Torres*, 632 N.W.2d at 616.

*Specific-intent crime*

"[Appellate courts] apply common law principles when determining whether a statute is a general-intent or a specific-intent crime." *State v. Wilson*, 830 N.W.2d 849,

5

853 (Minn. 2013). "When a statute simply prohibits a person from intentionally engaging in the prohibited conduct, the crime is considered a general-intent crime." *State v. Fleck*, 810 N.W.2d 303, 308 (Minn. 2012). "[A] specific-intent crime requires an intent to cause a particular result." *Id.* (quotation omitted). "[T]he most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." *Id.* (quotation omitted).

The jury found Browder guilty of aiding and abetting third-degree criminal sexual conduct under Minn. Stat. §§ 609.05, subd. 1, .344, subd. 1(d). Section 609.344, subdivision 1(d), provides that third-degree criminal sexual conduct includes sexual penetration with a complainant who "the actor knows or has reason to know . . . is mentally impaired, mentally incapacitated, or physically helpless." Under section 609.05, subdivision 1, a person is criminally liable for another's crime if he "intentionally aids" the other to commit that crime, which the supreme court has explained "embodies two important and necessary principles: (1) the defendant knew that his alleged accomplices were going to commit a crime, and (2) the defendant intended his presence or actions to further the commission of that crime." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (quotations omitted). The intent requirements for aiding and abetting go "beyond any mental state required with respect to the *actus reus* of the crime." *See Fleck*, 810 N.W.2d at 308. We conclude that aiding and abetting third-degree criminal sexual conduct is a specific-intent crime. *See State v. Wenthe*, 845 N.W.2d 222, 232 (Minn. App. 2014) ("Third-degree criminal sexual conduct involving an impaired victim who is incapable of consenting also requires proof of specific intent because it requires proof

6

that the defendant either knows or has reason to know of the victim's condition."), *review granted on other grounds* (Minn. June 25, 2014).

*Sufficiency of evidence to support jury finding*

The second requirement for a voluntary-intoxication jury instruction is that the "evidence [be] sufficient to support a jury finding, by a preponderance of the evidence, that the defendant was intoxicated." *Torres*, 632 N.W.2d at 616. "A party must satisfy the burden of production before that party is entitled to a voluntary intoxication jury instruction." *Wilson*, 830 N.W.2d at 854. The evidence produced must be "consider[ed] . . . in a light most favorable to the defendant." *Id.* at 855.

Browder testified that he began drinking at 2:30 p.m. on July 30, 2013, and that he felt "very intoxicated" when he, Carlson, and J.H.B. arrived at Loring Greenway. He testified that he "had to sit down for a while" and that he was "uncomfortable with walking because [he] was intoxicated." One of the police officers testified that Browder showed indications of intoxication, which included that Browder smelled of alcohol. The officer had no doubt that Browder had been drinking. Another officer testified that Browder's "eyes appeared red and maybe a little bloodshot." Viewing the evidence of Browder's intoxication in the light most favorable to him, we conclude that Browder satisfied his burden of production on his claim of intoxication.

*Intoxication as explanation for actions*

The third requirement for a voluntary-intoxication jury instruction is that the defendant "offer intoxication as an explanation for his actions." *Torres*, 632 N.W.2d at 616. A defendant offers intoxication as an explanation for his actions by making "an offer

7

of proof to support her theory that she was so intoxicated that she was unable to form intent." *Wilson*, 830 N.W.2d at 856. Even without an offer of proof, "it may be that there is some point at which evidence of a defendant's intoxication, whether by consumption of intoxicants alone or in combination with other evidence, is so overwhelming as to constitute the effective offer of intoxication as an explanation for the defendant's actions." *Torres*, 632 N.W.2d at 617. But "the mere fact of a person's drinking does not create a presumption of intoxication, and the possibility of intoxication does not create the presumption that a person is incapable of forming a specific intent." *Wilson*, 830 N.W.2d at 856 (quotation omitted).

Here, Browder concedes that he "did not explicitly offer intoxication as an explanation for his actions" but argues that "th[e] explanation was implied." After the close of evidence, he argued that he had offered evidence of his intoxication "as an excuse or explanation for his actions" and that this was so because "he was saying he was drinking and that his memory was affected by the drinking as the evening progressed." But Browder's testimony regarding the effect of alcohol on his memory was unrelated to his conduct. Rather, his testimony regarding the effect of alcohol on his memory related only to the timing of certain events during the evening of July 30. His testimony did not call into doubt his ability to form intent to aid and abet third-degree criminal sexual conduct under Minn. Stat. §§ 609.05, subd. 1, .344, subd. 1(d).

On appeal, Browder argues that "the evidence was consistent and overwhelming that [he] was intoxicated and that his intoxication affected both his judgment and his actions." When determining whether evidence "is so overwhelming as to constitute the

8

effective offer of intoxication as an explanation," the supreme court has examined supportive evidence in conjunction with evidence contradicting intoxication and lack of intent. *Torres*, 632 N.W.2d at 617. As evidence of his intoxication, Browder emphasizes that the presence of police officers did not prompt him to pull J.H.B.'s dress down to cover her, that he repeatedly told police officers that J.H.B. was just drunk and that he was taking care of her, that he did not provide police officers with J.H.B.'s name, and that "[i]t did not occur to him that [J.H.B.] needed medical attention." The state aptly notes that Browder's conduct could have been an attempt to assure police officers that no criminal activity had occurred rather than evidence of his intoxication.

We conclude that Browder's testimony about the effect of alcohol on his memory did not constitute an offer of poof that his level of intoxication rendered him unable to form specific intent to commit the crime of aiding and abetting third-degree criminal sexual conduct. The record contains no evidence that Browder ever told any law-enforcement officer that his intoxication undermined his judgment. And although officers testified about Browder's indicia of intoxication, they also testified that he was able to stand up on his own, did not stumble or slur his words and was able to talk coherently, and was not "highly intoxicated" because "he could talk and walk and all that." Browder testified at trial to specific events that occurred on the evening of July 30. Viewing all the evidence of Browder's intoxication in a light most favorable to him, we conclude that the evidence was not so overwhelming as to constitute the effective offer of intoxication as an explanation.

In addition to his failure to make an adequate offer of proof of intoxication in the district court, Browder's claim of intoxication as a defense is undercut by the general-denial defense that he presented to the jury. "When a defendant denies that conduct occurred, the intoxication defense is unavailable because he has not placed intent at issue." *State v. Austin*, 788 N.W.2d 788, 794 n.5 (Minn. App. 2010), *review denied* (Minn. Dec. 14, 2010). Browder denied that J.H.B. was "[p]inned" between Carlson and him or even that she was between the two of them. He testified that he had not done "anything wrong."

Because Browder offered a general denial as a defense and did not proffer any evidence that his intoxication rendered him unable to know or have reason to know that J.H.B. was mentally impaired, mentally incapacitated, or physically helpless, or to know that Carlson was going to commit a crime, or to intend his presence or actions to further the commission of that crime, the district court did not err by declining to instruct the jury on voluntary intoxication.

**Pro se arguments**

*Jury coercion by expert witnesses*

Browder argues that many expert witnesses coerced the jury into reaching a guilty verdict. We broadly interpret Browder's argument as a challenge to the admissibility of the expert testimony given by the witnesses. "A defendant appealing the admission of evidence has the burden to show the admission was both erroneous and prejudicial." *State v. Riddley*, 776 N.W.2d 419, 424 (Minn. 2009). Browder has failed to meet his burden. He identifies no testimony as either inadmissible or prejudicial. Moreover, by failing to

10

make any legal argument or cite to any relevant legal authority, Browder has waived this argument. *See State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008) (stating that "[supreme court] will not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority").

*Inconsistent testimony*

Browder argues that the evidence was insufficient to support the jury finding of guilt because of purported inconsistencies in the testimony of five witnesses. But "[i]nconsistencies in the state's case are not grounds for reversing the jury verdict." *State v. Robinson*, 604 N.W.2d 355, 366 (Minn. 2000); *see also State v. Suhon*, 742 N.W.2d 16, 20 (Minn. App. 2007) ("Inconsistencies in prosecution evidence do not require reversal."), *review denied* (Minn. Feb. 19, 2008). "[I]nconsistencies in testimony go to witness credibility, which is an issue for the factfinder, not [an appellate] court." *State v. Juarez,* 837 N.W.2d 473, 487 (Minn. 2013). "The jury is free to accept part and reject part of a witness's testimony." *State v. Mems*, 708 N.W.2d 526, 531 (Minn. 2006). The jury was free to believe or disbelieve any portion of any witness's testimony, whether or not inconsistent with other testimony. Browder's argument therefore fails.

*Prosecutorial error*

Browder argues that reversal is warranted because the prosecutor committed four errors to which Browder did not object. "When an objection was not made to alleged prosecutorial misconduct, [appellate courts] review under a modified plain-error test." *State v. Martin,* 773 N.W.2d 89, 104 (Minn. 2009). "Under that test, the defendant has the burden to demonstrate that the misconduct constitutes (1) error, (2) that is plain."

11

*State v. Mosley*, 853 N.W.2d 789, 801 (Minn. 2014). "If the defendant is successful, the burden then shifts to the State to demonstrate that the error did not affect the defendant's substantial rights." *State v. Matthews*, 779 N.W.2d 543, 551 (Minn. 2010). "If all three prongs of the test are met, [appellate courts] may correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Mosley*, 853 N.W.2d at 801 (quotations omitted).

Browder argues that the prosecutor erred by stating during his rebuttal argument that "you know that [Browder] sexually penetrated [J.H.B.] while she was unconscious." Browder argues that the prosecutor's statement was an improper expression of his opinion in violation of established professional standards adopted by the American Bar Association (ABA). "The prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant." ABA Standards for Criminal Justice: Prosecution Function and Defense Function, Standard 3-5.8(b) (3d ed. 1993). But "[i]n closing argument, a lawyer may present all legitimate arguments on the evidence and all proper inferences that can be drawn from that evidence." *State v. Pearson*, 775 N.W.2d 155, 163 (Minn. 2009). The prosecutor's statement constituted argument about a permissible inference based on the testimony of eyewitnesses, forensic scientists, and a nurse. This was not plain error.

Browder argues that the prosecutor erred by stating that "whether or not [Browder] was intoxicated is irrelevant. It is not an excuse, it is not a defense. It does not excuse his crime." A prosecutor may reference the law during trial as long as the prosecutor does not misstate the law. *See State v. Cao*, 788 N.W.2d 710, 716 (Minn. 2010) ("Attorneys may

reference the law during trial."). "When a defendant denies that conduct occurred, the intoxication defense is unavailable because he has not placed intent at issue." *Austin*, 788 N.W.2d at 794 n.5. Here, rather than place intent at issue, Browder denied the alleged conduct. The prosecutor's statement was not plain error.

Browder argues that the prosecutor erred by eliciting testimony from a police officer about what the officer believed to be true regarding the incident. "It is improper for a prosecutor to ask questions that are calculated to elicit or insinuate an inadmissible and highly prejudicial answer." *State v. Henderson*, 620 N.W.2d 688, 702 (Minn. 2001). But a competent witness may testify as to matters of which he has personal knowledge. Minn. R. Evid. 601, 602. The prosecutor questioned two police officers about their personal knowledge, using primarily open-ended questions. The officers provided no inadmissible testimony. This was not plain error.

Browder argues that the prosecutor erred by stating that Browder had admitted to putting his fingers inside of J.H.B. The state correctly notes that the prosecutor did not claim that Browder had admitted to putting his fingers inside of J.H.B. Rather, the prosecutor stated that the only explanation for the "amount of [J.H.B.'s] contribution" of DNA that was found on Browder's hands was that Browder put his fingers inside J.G.B.'s vagina. "In closing argument, a lawyer may present all legitimate arguments on the evidence and all proper inferences that can be drawn from that evidence." *Pearson*, 775 N.W.2d at 163. The prosecutor's statement constituted argument about a permissible inference drawn from testimony about DNA testing and results. This was not plain error.

**Affirmed.**

13